DALLAS JOINT STOCK LAND BANK OF DALLAS V.
M. E. HARRISON ET AL.

No. 7711. Decided November 19, 1941.
Rehearing overruled December 17, 1941.
(156 S. W., 2d Series, 963.)

*Lawther, Cramer, Perry & Johnson,* of Dallas, for plaintiff in error.

An abstract of title having been furnished to buyers of real estate by the sellers under a contract providing that the sellers should furnish same and that the buyers were to submit in writing any objections to said title and in the event that sellers do not own all the minerals it shall not be required to warrant the title to more than it owns, and the buyers having made no objection but return the abstract a short time thereafter and the sale having been closed, buyers have no cause of action based on alleged misrepresentations as to the amount of land covered by an oil lease, made months before the contract was signed. Southern Dev. Co. v. Silva, 125 U. S. 248, 31 L. Ed. 62A; Terrell v. Summit Place Co., 235 S. W. 198; Joske v. Irvine, 91 Texas 574, 44 S. W. 1095.

*Stine, Bunting & Stine,* of Henrietta, for defendants in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an action for damages, brought by M. E. Harrison and W. B. Allen against the Dallas Joint Stock Land Bank of Dallas, for alleged fraud and deceit in inducing them to purchase 440 acres of land, situated in Clay County, under the

alleged misrepresentation that only the north 100 acres of said land were under an oil and gas lease; whereas in fact the whole 440 acres were covered by said lease. It was alleged that the value of the land without the lease was $35.00 per acre; whereas the value of the land with the lease thereon was $25.00 per acre. The case was submitted to the jury on special issues; and, based upon the findings of the jury, the trial court entered judgment in favor of plaintiffs, and against the defendant, in the sum of $3,863.53. This judgment was affirmed by the Court of Civil Appeals. 135 S. W. (2d) 573. This Court granted a writ of error to review the opinion of the Court of Civil Appeals.

We shall refer to the defendants in error as plaintiffs, and to the Dallas Joint Stock Land Bank of Dallas as the Bank.

Plaintiffs base their right of recovery against the Bank on the ground that they were induced to purchase the 440 acres of land in controversy because of the statements that the oil lease was on only a part of the land. Plaintiffs pleaded in detail the sales contract and the deed hereinafter described.

When plaintiffs closed their case the Bank requested the trial court to instruct the jury to return a verdict for the Bank. This request was refused, and such refusal was urged as error in the lower courts and it is urged here.

As a basis for the judgment entered in the trial court, the jury found: (1) That J. A. Mounts, the agent of the Bank, represented to plaintiffs that only a portion of the 440-acre tract was under an oil and gas lease; (2) that Mounts represented that 100 acres were under an oil and gas lease; (3) that Mounts in making such statements was acting within his authority; (4) that plaintiffs believed such statements to be true; and (5) that the statements made by Mounts were an inducing cause for plaintiffs' buying said land.

The Bank urged many objections to the issues submitted. One of the main objections was that of all the issues submitted to the jury none of them constituted an ultimate issue upon which a judgment could be based.

The Bank owned 440 acres of land situated in Clay County, and the plaintiffs were tenants on the land in controversy prior to the negotiations for the sale thereof. Plaintiffs claimed that

they had negotiations for such sale with several agents and representatives of the Bank, and that it was represented that only the north 100 acres of the land were under an oil and gas lease.

It is also undisputed that thereafter, on June 23, 1936, J. A. Mounts, an agent of the Bank, sent a letter to plaintiffs, setting out a price of $15,000.00 for the land and specifying the manner of payment; and in such letter it was stated, as one of the conditions of such sale, as follows: "Sale would also be subject to outstanding oil and gas lease dated October, 1932."

On July 15, 1936, the Bank, acting by and through its officers, as seller, and the plaintiffs as buyers, executed a sales contract, by the terms of which the Bank agreed to sell, and plaintiffs agreed to buy, the land for $15,000.00, of which $1,500.00 was to be paid in cash and the balance in deferred payments. The material portion of the contract pertinent to the issue involved here specifically provided: "The seller agrees to furnish an abstract of title showing a marketable title to said land free of all liens not specifically mentioned in the consideration for use in examining the title of said land. *The buyer agrees to submit in writing his objections, if any, to said title within fifteen days from receipt thereof, and the seller agrees to perfect said title within a reasonable time thereafter. In the event the seller does not own all the minerals, it shall not be required to warrant the title to more than it owns, but the purchaser shall have the option to accept the title without all the minerals or reject the title if the seller does not acquire all the mineral rights within a reasonable time.* The abstract shall be returned to the seller to be retained until all the purchase price is paid." (Emphasis ours.)

It was stipulated by the parties in the trial court that the Bank on or about July 14, 1936, furnished the plaintiffs a complete abstract, which showed all instruments of record affecting the title to the land, including a copy of the oil and gas lease from the Bank to the Texas Company, dated October 13, 1932; that such lease covered the entire 440 acres for a primary period of ten years, with the delay rentals for one year after its date in the amount of $110.00, payable semiannually, and that the lease was of record at the time the Bank deeded the land to plaintiffs.

It was also admitted by plaintiffs that each of them read the contract of sale carefully before signing it. It was further

admitted that the abstract which was furnished was not examined by plaintiffs, and that plaintiffs did not have an attorney to examine it for them. It is also undisputed that the abstract was kept by plaintiffs for at least the full fifteen days, and then returned to the Bank without any requirements or objections. In fact, plaintiffs did nothing to determine whether or not the title to the land was good.

Thereafter, as a consummation of said written contract, the Bank executed to Harrison and Allen its deed, dated August 4, 1936, but not delivered until Spetember 21, 1936, stipulating that for the consideration expressed in the sales contract it "has granted, sold and conveyed, and by these presents does grant, sell and convey unto the said W. B. Allen and M. E. Harrison, of the County of Clay, State of Texas, except as below stated, all that certain lot, tract or parcel of land situated in the County of Clay, State of Texas, and described as follows: (Here follows description of the 440 acres of land.)

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said W. B. Allen and M. E. Harrison, their heirs and assigns forever, and said grantor does hereby bind itself, its successors and assigns, to Warrant and Forever Defend, all and singular the said premises unto the said W. B. Allen and M. E. Harrison, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, *except any mineral interest which grantor does not own.*" (Italics ours.)

Grantor conditionally reserved in the deed one-fourth of the minerals in the land.

After the execution of the deed, plaintiffs paid to the Bank $1,500.00, and executed notes and a deed of trust to cover the deferred balance. It is undisputed that the plaintiffs read the deed and that same was accepted by them.

The controlling facts involved here are: The Bank sent a letter to the plaintiffs in which it was stated that the sale would be made on condition that "sale would also be subject to outstanding oil and gas lease dated October, 1932." Subsequently the contract of sale was executed, which required the seller and the buyer to do certain things. The Bank was to furnish an abstract showing the condition of the title. The

buyers agreed to submit in writing objections to the title, if any, within fifteen days from the receipt of the abstract; and the seller agreed to perfect the title within a reasonable time thereafter. It was further agreed that if the seller did not own all of the minerals, it would not be required to warrant the title to more than it owned; but the buyers should have the option to accept the title without all the minerals, or to reject the title if the seller did not acquire all the mineral rights within a reasonable time.

It is undisputed that the abstract was furnished, showing the existence of the oil lease to the Texas Company, and that the buyers did not make any objections to the title. Thereafter the deed above described was executed by the Bank; and same was received, read, and accepted by the buyers, and they made the payments as stipulated in the deed.

Plaintiffs do not base their cause of action on the ground that they were fraudulently induced to execute the sales contract on account of such untrue statements about the oil lease, or that they did not read such contract, or that they accepted the deed without reading it, but rely solely upon the statements made with reference to the oil lease. Plaintiffs neither in their pleadings nor in the proof raised those issues as grounds for recovery. No issues bearing on those questions were submitted to the jury. The only issue submitted to the jury was whether the statements made by J. A. Mounts and others about the oil lease "were the inducing cause of the plaintiffs buying said land."

The jury found that J. A. Mounts was acting within the scope of his authority, and bound the Bank by the statements made by him. The Bank denied the authority of J. A. Mounts to make the statements attributed to him, and denied that he made them. The Bank, contends that it is not liable in this suit because of the contract of sale and deed made to plaintiffs.

The Bank contends that J. A. Mounts was not authorized to make the statements; and that if he did make them, it was not bound by such statements. In support of this contention the following cases are cited: Dallas Joint Stock Land Bank of Dallas v. Colbert (Civ. App., writ denied), 98 S. W. (2d) 239, (id. 129 Texas 235, 102 S. W. (2d) 1031, 136 Texas 268, 150 S. W. (2d) 771) ; Dallas Joint Stock Land Bank of Dallas v. Cavitt (Civ. App., writ dismissed), 93 S. W. (2d) 207. For the purposes of this opinion we shall accept the finding of the jury that J. A. Mounts did have the authority to make them.

Plaintiffs rely for recovery on that line of cases which hold that if the seller induced the buyer by fraud to purchase land, the seller may be made to respond in damages on account of such fraud. We cite some of the cases relied upon by plaintiffs: Labbe v. Corbett, 69 Texas 503, 6 S. W. 808; Buchanan v. Burnett, 102 Texas 492, 119 S. W. 1141; Fahey v. Kaies, 181 S. W. 782 (Civ. App., writ refused); Peck v. Robinson & Smith, 194 S. W. 456 (Civ. App., writ refused); Ford v. Sims, 190 S. W. 1165; Sanders v. Hickman, 235 S. W. 278.

We do not question the rule announced in the above cases. The decisions rest on facts different from the facts in this case. In those cases the buyer was not under contractual obligations to do certain things. Here we have a case in which the seller and the buyer stipulate in a contract the specific terms of the sale and what is exacted of each to consummate such sale. In compliance with such contract a deed was executed, carrying out the terms of such contract; and such deed was accepted and recorded by the buyers. They knew the terms of the contract and what it required of them. They made no objection to the contract, and let the Bank execute the deed based on same. They accepted the deed, and made no objections to its contents.

Nor can we sustain the contention that if the plaintiffs had examined the abstract in 1936, and had found the lease dated October 13, 1932, covering the whole 440 acres, plaintiffs would have been justified in assuming that 340 acres of the 440 acres under lease had been released by the Texas Company. The presumption is just to the contrary, because the Texas Company's lease had been or could have been kept alive by payment of the delay rentals during the primary term. It is undisputed that the abstract disclosed the lease, and that the buyers contracted to point out the objections, if any, to the title within a certain time; and certainly if they had exercised a reasonable inquiry they could have discovered the lease against the 440 acres. According to their own agreement, they obligated themselves to point out any objections to the title. This they did not do.

■ Under the state of this record we hold that the plaintiffs are bound by the contract and the deed executed between themselves and the Bank, and that they cannot be allowed to recover for the alleged prior statements of the Bank's agent as to the amount of the land which was covered by the oil

and gas lease. Under the contract the Bank agreed to furnish plaintiffs an abstract of title, and plaintiffs agreed to submit in writing any objections which they might have to the title. This clause was doubtless inserted for the protection of both parties against such representations as were allegedly made by Mounts and others in this case. An agreement to submit objections to the title certainly imposed on the buyers either a direct or an implied agreement to examine the abstract, or to have it examined by an attorney. Sherman v. Sipper, 137 Texas 85, 152 S. W. (2d) 319; Lieber v. Nicholson (Com. App.), 206 S. W. 512; Davenport v. Sparkman (Com. App.), 208 S. W. 658, 43 Tex. Jur., p. 77, sec. 46.

It will be noted that the contract pointed out specifically that, "In the event the seller does not own all the minerals, it shall not be required to warrant the title to more than it owns, but the purchaser shall have the option to accept the title without all the minerals or reject the title if the seller does not acquire all the mineral rights within a reasonable time." Under such a contract as this, and under the letter from the Bank to the plaintiffs, and under the terms of the deed itself, the buyers could not close their eyes to the facts which were fully available to them and which had been called to their attention.

In the case of Sherman v. Sipper, supra, this Court said: "Where a person has a right in property, and he claims fraudulent statements were made concerning the title to such property, when the records relating to such title are open to him he must exercise reasonable diligence to discover such defects; and if by the exercise of such diligence he could have discovered such defect and would have known of his right, he is held to have known it, * * *"

If Mounts and others did make the untrue statements about the oil lease, as alleged, that fact would not, under the record in this case, relieve the buyers of their obligations subsequently expressed in the sale contract and in the deed. The rights of the Bank are not restricted to such a narrow base. In order to support a judgment in their favor against the Bank, the buyers must allege and prove that the execution of the sales contract and their acceptance of the deed were induced by fraud on the part of the Bank, and must obtain jury findings to that effect. The burden rested on the plaintiffs to do this. They failed to do this, and the judgment can-

not be sustained on the ground above stated. Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79.

■ Plaintiffs urge, in the alternative, as further ground for recovery, that the Bank's deed to plaintiffs contained the terms "grant and convey," which implied a covenant against prior conveyances, as provided for by Article 1297, Revised Civil Statutes 1925; and it being undisputed that the Bank had conveyed an oil and gas lease to the Texas Company in 1932, the Bank had therefore breached the implied covenant.

It is recited in the deed from the Bank to the buyers that the Bank granted and conveyed unto the buyers, "except as below stated," the land in controversy. Then in the habendum clause the Bank warranted the land conveyed, "except any mineral interest which grantor does not own." In order to clarify any ambiguity between the granting and habendum clauses contained in the deed, as between the parties, the deed and the sales contract may be construed together in order to arrive at the intention of the grantor and the grantees in such deed. 14 Tex. Jur., p. 926, sec. 147, and cases cited in the footnotes; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 136 S. W. (2d) 800, 127 A. L. R. 1217; Pitts v. Camp County, 120 Texas 558, 398 S. W. (2d) 608; 27 C. J. S., p. 344.

The question of the rights of an innocent purchaser of this land is not involved here.

■ The trend of modern decisions is to relax the strictness of the old rule as to repugnancy in deeds, and the sounder method of construction is used which permits the consideration of all parts of an instrument. In order to arrive at the intention of the parties interested, a construction is preferred which harmonizes apparently conflicting clauses. 14 Tex. Jur., p. 920, sec. 141, and cases cited. This Court has repeatedly held that the dominant purpose in construing a deed is to ascertain the intention of the parties as expressed in the deed itself, and such intention expressed therein is a controlling factor. It is a rule that the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. Bumpass v. Bond, 131 Texas 266, 114 S. W. (2d) 1172; Totton v. Smith, 131 Texas 219, 113 S. W. (2d) 517; 14 Tex. Jur., p. 919 et seq., sec. 140 et seq.

In the case of Berry et al v. Spicey et al (Civ. App.), 97 S. W. 511, the rule was clearly stated in the following language: "The intention of the grantor may be expressed in the habendum clause, or anywhere else in the instrument, and when it may be ascertained from the instrument it should be given effect, without regard to technical rules of construction."

■ Applying these rules to the facts in this case, we think, that, construing the deed and the sales contract together, the deed cannot be construed as carrying any such implied covenant. The deed expressly states that the Bank is not making any warranty to mineral rights which it does not own. To hold that the Bank impliedly covenants that it had not conveyed any minerals under the land would do violence to the intention expressed in the deed and in the sales contract. We therefore hold that there was no implied covenant in the deed in question, and plaintiffs cannot recover on this ground.

The judgments of the trial court and Court of Civil Appeals are both reversed, and judgment is here rendered for plaintiff in error.

Opinion delivered November 19, 1941.

Rehearing overruled December 17, 1941.