**Robert Earl HASTY et al., Appellants,**

v.

**Paul H. McKNIGHT et al., Appellees.**

**No. 7999.**

Court of Civil Appeals of Texas, Texarkana.

Nov. 10, 1970.

Rehearing Denied Dec. 15, 1970.

Howard Carney, Carney & Mays, Atlanta, J. R. Cornelius, Cornelius & Cornelius, Jefferson, for appellant.

Ruben K. Abney, Abney & Baldwin, Marshall, for appellee.

CHADICK, Chief Justice.

On the 4th day of April, 1938, Mrs. Mary W. Hasty, individually and as community administratrix of the estate of Union Hasty, deceased, as lessor, entered into an Oil, Gas and Mineral Lease Agreement covering an 89 acre tract of land in Marion County, with S. W. McRae, as lessee. Thereafter, on the 8th day of August, 1938, Mrs. Hasty as grantor and in the same capacities previously mentioned executed and delivered to H. A. Vestal, as grantee, an instrument conveying an interest in the same land. Determination of this appeal is controlled by a proper construction of the nature and effect of this latter instrument of conveyance. The scrivener employed a form printed by Martin Stationery Company, Dallas, labeled "Mineral Deed" in writing the conveyance contract. The body of the instrument, with the typed-in verbiage emphasized, is as follows:

"KNOW ALL MEN BY THESE PRESENTS: THAT *I, Mary W. Hasty, Community Administratrix of the Estate of Union Hasty and individually* hereinafter called Grantor, of *Marion* County, Texas, for and in consideration of the sum of *Ten & No/100* Dollars (*$10.00*) cash in hand paid by *A. J. Vestal* hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said Grantee, an undivided *One half*

interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in *Marion* County, Texas, to-wit:

*Being part of the Lower I. N. Jones Survey and described as being 89 acres of land more or less, bounded as follows:*

*On the West by lands owned by Carrie Moseley;*

*On the North by lands owned by Mrs. Sussie Chatten;*

*On the East by lands owned by C. C. Braden;*

*On the South by lands owned by Mrs. Mary Torrans, and being all of the lands owned by Union Hasty and heirs in the said lower I. N. Jones Survey.*

*It is agreed and understood by and between the parties hereto that this deed is intended to convey only one half of the mineral under said land but the Grantee is not to receive any part of the Bonus Money in case the present lease should lapse or become forfeited, and it will not be necessary for said Grantee to join in the lease, and is to receive no part of the rental money paid to extend the term of said lease.*

Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of *Any valid lease of record,* it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes *one half interest* of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above described land.

"It is understood and agreed that *none* of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes canceled or forfeited, then and in that event, Grantee shall own *no part* of all oil, gas and other minerals in and under said lands, together with a like *none (of) the* interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands.

"TO HAVE AND TO HOLD the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee herein, and Grantee's successors, heirs and assigns forever; and Grantor does hereby bind *myself my* successors, heirs, executors and administrators, to warrant and forever defend all and singular the said property unto the said Grantee herein, and Grantee's successors, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"WITNESS, *my* hands this the *8th* day of *August*, *1938*."

The facts, as well as certain legal conclusions and the question for decision, were stipulated in the trial court. Included in the stipulation agreement were the following paragraphs, to-wit:

"6. That on August 8, 1938, the 89 acres above described was under an oil and gas lease executed by Mary W. Hasty, individually and as community administratrix of the estate of Union Hasty, deceased, as Lessor to S. W. McRae, as lessee, dated April 4, 1938, recorded in Vol. 108, page 109, Deed Records of Marion County, Texas;

"7. There was no production of oil, gas or other minerals from the land in question under the terms of the lease to S. W. McRae referred to in item 6 above and said lease expired and was cancelled by its own terms; and

"8. That the sole purpose of this lawsuit is to have the Court construe two instruments executed by Mary W. Hasty, individually and as community administration of the estate of Union Hasty, deceased, as grantor, one to A. J. Vestal as grantee, dated August 8, 1938, recorded in Vol. 109, page 150, Deed Records of said County; and the other to Roy R. Golden, as grantee, dated January 6, 1939, recorded in Vol. 109, page 630, said Deed Records; and determine as a matter of law (a) whether said instruments conveyed perpetual interests in the land covered thereby; or (b) whether said instruments conveyed term interests in said land terminating upon the expiration of the lease mentioned in item 6 above."

The action for construction of the Mary W. Hasty to Roy R. Golden instrument mentioned in the stipulation was abandoned and its construction is not at issue in this appeal. The appellees, as defendants in the trial court, contended and the trial court found that the conveyance by Mary Hasty to A. J. Vestal, when properly construed, vested in Vestal and his successors in title a perpetual undivided one-half non-participating royalty interest in the tract described. The judgment was founded upon the court's construction of the following language typed into the Mary W. Hasty to H. A. Vestal conveyance, to-wit:

"It is agreed an understood by and between the parties hereto that this deed is intended to convey only one half of the minerals under said land but the Grantee is not to receive any part of the Bonus Money in case the present lease should lapse or become forfeited, and it will not be necessary for said Grantee to join in the lease, and is to receive no part of the rental money paid to extend the term of said lease."

The quoted sentence will be referred to from time to time hereafter as the conveyance's mutual intent provision or sentence.

For the purpose of an analysis, the sentence quoted and referred to as the mutual intent provision of the conveyance will be disregarded and left out of consideration and an effort made to determine the effect of the instrument in the absence of such provision. Initially, the instrument makes a grant of one-half of the minerals in the granting clause. This grant is followed by language that recognizes that a valid oil, gas and mineral lease existed at the time the grant was made upon the land described, including the interest conveyed. Following such recognition, the parties contracted that upon cancellation or forfeiture of the existing lease the grantee would own no part of the oil, gas and other minerals in and under the land. The printed form was consciously tailored to convey a non-participating royalty interest in any royalty created by and provided for in any valid existing oil, gas and mineral lease upon the 89 acre tract, and specified that all mineral interest terminated upon cancellation or forfeiture of the then existing lease, or leases.

■ On examining the original instrument brought forward in the record it seems probable that the sentence referred to as the mutual intent provision was placed in the instrument immediately following the description of the land simply because sufficient space was available to accommodate the provisions at that place and not elsewhere on the face or the form. In construing the instrument the effect of the mutual intent provision's placement in the instrument is of no moment, as intent is gathered from the instrument as a whole. Dallas Joint Stock Land Bank of Dallas v. Harrison, 138 Tex. 84, 156 S.W. 2d 963 (1941); Berry v. Spivey, 44 Tex. Civ.App. 18, 97 S.W. 511 (San Antonio, 1906, no writ); 19 Tex.Jur.2d Deeds § 116 (1960). The sentence appears to be a specific and deliberate statement of the mutual intention of the parties to the instrument, and a summary and elucidation by the grantor of the meaning and effect of the writing constituting the agreement. Expressly, the sentence referred to the remainder of the instrument and was a part of it; it constituted no effort to write a separate and distinct contract.

■ An analysis of the mutual intent provision must be made to determine whether or not the specially expressed or implied mutual intent of the parties is inconsistent with the effect of the other language of the instrument; if it is in harmony no problem of interpretation or construction is presented. The segment of the sentence preceding the disjunctive word "but" in the mutual intent provision is a declaration that the parties intend the instrument to convey one-half of the minerals under the land. Although this intention is in harmony with the granting clause of the instrument, such intent, if not modified by the remaining language, is inconsistent with the grant of a non-participating royalty interest, as heretofore discussed. This inconsistency is dissipated when the language of the segment following the disjunctive "but" is considered, as this particular language also expresses an intent that only a non-participating royalty will be conveyed by the instrument. The second segment expresses the intent that the grantee is not to receive any part of the bonus money in case the existing lease lapsed or terminated by forfeiture. Bonus money, as the term is understood in mineral lease conveyancing, is the initial consideration or bonus paid a lessor as an inducement to enter into a mineral lease. Reference to bonus money at this point in the sentence and specification of the recipient of such money upon the forfeiture of the existing lease implies that the parties had in contemplation and were contracting with respect to the bonus money that would accrue upon a subsequent lease when and if the existing lease terminated. This implication gives meaning and purpose to the remaining language in the second segment of the sentence. Thus con-

strued, the mutual intent of the parties expressed by the sentence is that the grantor reserved from the grant made the right (that is, a fee interest subject to his lawful conveyance) to lease the minerals theretofore granted and to receive all bonus money and delay rentals accruing therefrom after termination of the existing lease. Such reservation, in effect, reduces the mineral grant to a perpetual grant of a non-participating royalty interest in the tract's minerals.

This interpretation of the intent provision, and such construction of the instrument, is justified because the meaning of the sentence otherwise would be fragmented to the extent that it would express nothing reasonably within contemplation of the parties; and unless given this interpretation the segment becomes a jumble of words expressing disconnected thoughts of no relevance to the grant being made. When the choice is between an interpretation that gives the language of the sentence operative effect and interpretation that makes the language's import ineffective and meaningless, the meaningful interpretation must be accepted. 23 Am.Jur.2d Deeds §§ 163–164 (1965); 19 Tex.Jur.2d Deeds § 112 (1960); 26 C.J.S. Deeds § 84b (1956).

It develops, on consideration of the instrument in its entirety, that the only inconsistency between the conveyance's mutual intent provision and the language used thereafter in the writing is that the mutual intent provision expresses an intention to grant a one-half non-participating royalty in perpetuity, while another paragraph in the instrument makes the grant terminable on lapse or forfeiture of the existing mineral lease. Because of this inconsistency it must be determined which provision is to be effective and paramount. Resort to rules governing inconsistencies, repugnancies and conflicts must be made.

The paramount rule followed in construing a deed is that the grantor's intention be determined. The dominant intent must control. See* Am.Jur.2d Deeds § 169 (1965); 19 Tex.Jur.2d Deeds, §§ 107, 112, 116 and 117 (1960); 26 C.J.S. Deeds § 90 (1956). The action of the grantor in having the mutual intent provision typed into the instrument as a separate and specific statement of the intent of the parties to the instrument compels a conclusion that the intent therein expressed was paramount to and designed to override any contrary intent expressed or deducible from language elsewhere in the instrument. This conclusion is aided by the rule set out in 19 Tex.Jur.2d Deeds § 117 (1960) that when provisions of a deed can not be harmonized, and the deed's language leaves the grantor's intention in doubt, the instrument will be construed to convey the greatest estate its terms will permit.

The appellants' points of error are respectfully overruled and the judgment of the trial court is affirmed.

* For convenience, texts embodying the rules to be applied have been cited rather than particular cases. There is little or no disagreement as to the existence of a rule; the propriety of its application is usually the issue. Cases supporting the rule referred to are collected in the footnotes of the text cited.