**M. W. YARBOROUGH, Appellant,**

v.

**Neville BACK, Appellee.**

No. 8852.

Court of Civil Appeals of Texas, Amarillo.

Jan. 23, 1978.

**594**

Culton, Morgan, Britain & White, William H. Brian, Jr., Amarillo, for appellant.

Edwards & Associates, Thomas S. Hoekstra, Amarillo, for appellee.

REYNOLDS, Justice.

The owner-lessor of a stallion recovered from the lessee a money judgment for the uninsured death of the stallion while in lessee's possession under a written agreement. The determinative question is whether the evidence supports the presumed finding of the owner-lessor's reliance on the lessee's false representation of insurance coverage as an inducement to contract. We hold that there is no evidence of probative force in support of the presumed finding. Reversed and rendered.

Texas residents Neville Back, the owner of a sixteen-year-old stallion named Poco Pine Back, and M. W. Yarborough conversed in the spring of 1975 concerning Yarborough's lease of the stallion. On or about 11 June 1975, Yarborough paid Back $2,000 and Back released Poco Pine Back to Yarborough's son. Yarborough secured and mailed an attorney-prepared written agreement to Back, who had gone to New Mexico. Back signed and returned the agreement to Yarborough.

By the agreement, dated 26 June 1975 and executed by both parties, Yarborough leased Poco Pine Back for the balance of the year for the $2,000 paid with an option Yarborough could exercise before 1 January 1976 to purchase the stallion for $10,000, less the $2,000 paid for the lease. The agreement did not mention insurance.

Poco Pine Back died uninsured some four and one-half months after Yarborough took possession of him. No fault for the death is attributed to Yarborough.

Back grounded his suit on fraud, pleading false representations by Yarborough upon which he reasonably relied and by which he was induced to enter into the written contract. The representations pleaded were: Yarborough's "telling Plaintiff [Back] that the stallion would be covered by insurance in the event of loss by death of the stallion;" and Yarborough told Back's agent, when the contract was prepared without the insurance provision, "that the stallion was at that time already insured against

loss by death for the amount of $25,000.00 by insurance purchased by Defendant [Yarborough]."

The matter of insurance coverage was in dispute at the trial before the court. Back testified that insurance was discussed before the agreement was finalized, and that he would not have agreed to lease Poco Pine Back if Yarborough had not told him "that he was going to get insurance on the horse." Yarborough testified that the first time insurance was mentioned was after the signed agreement was sent back to him; that Back requested insurance and Yarborough said he would turn it over to his insurance agent to see if he could get the horse insured.

There is Back's testimony that he wanted $8,000 insurance made in his name, and Yarborough said he would get insurance, before Poco Pine Back was released to Yarborough. Yet, Back released the stallion on or about 11 June 1975 to Yarborough's son after the son "told me his daddy was having his insurance agent work on it [the insurance]."

Back developed testimony that when he received the written agreement in New Mexico, he called his granddaughter, who was taking care of his ranch in Texas, and asked about the insurance. She then talked with Yarborough over a period of some two weeks. Yarborough first told her his insurance agent was working on it and then told her the horse was insured for $25,000. She reported to Back. However, Yarborough denied that he ever said the horse was insured.

Back was not asked, nor did he state, specifically whether he signed the written agreement before or after he was told the stallion was insured. His only testimony in this regard was developed in cross-examination as follows:

Q. When you noticed in the lease agreement that there wasn't any mention of insurance, why did you sign it?

A. I had talked to my granddaughter at home and she had talked to him, and he assured her he was working on getting the insurance.

The parties stipulated that Yarborough attempted to get insurance. It was Yarborough's testimony that his insurance agent was unable to find a company that would insure Poco Pine Back.

■ To be entitled to judgment on his pleadings, Back had the burden to prove and secure findings, either express or presumed, that he was induced by fraud on the part of Yarborough to enter into the written contract. *See Dallas Joint Stock Land Bank of Dallas v. Harrison,* 138 Tex. 84, 156 S.W.2d 963, 967 (1941). Preliminarily to rendering judgment for Back in the amount of $6,000, the trial court advised counsel by letter of "conclusions" made from the testimony. The parties dispute whether the "conclusions" constitute findings of fact; but, in any event, the court expressed no finding on reliance. Nevertheless, an essential element of fraud is that the false statement(s) must have been relied upon. *Davidson v. Commercial Nat. Bank of Brady,* 59 S.W.2d 949, 953 (Tex.Civ.App.—Austin 1933, writ ref'd).

■ At the outset, it must be noted that the first pleaded representation by Yarborough "that the stallion *would be* covered by insurance" (emphasis added) is nothing more than a promise to be performed in the future. At such, it does not constitute actionable fraud even if it was made to induce a contract and thereafter was not fulfilled, *Cassel v. West,* 98 S.W.2d 437, 439 (Tex.Civ.App.—Amarillo 1936, writ ref'd), unless the promise was made with a present intention not to perform. *Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971). Of course, the failure to fulfill the promise does not, by itself, even raise the issue of a present intention not to perform, *Turner v. Biscoe,* 141 Tex. 197, 171 S.W.2d 118, 119 (1943), which is completely negated by the stipulation that Yarborough attempted to secure insurance.

■ The query, then, is whether there is any proof that Back contracted in reliance on the pleaded false representation "that the stallion was *at that time* already insured" (emphasis added). Neither Back nor

anyone else testified that he relied on that representation in entering into the contract. The only evidence directly bearing on the matter is Back's testimony quoted above, the sense of which is that he signed the agreement because his granddaughter had been assured that Yarborough "was working on getting the insurance." This testimony is neither evidence of probative force, nor the proper basis for a reasonable inference, that Back entered into the contract through reliance on the representation that Poco Pine Back was then insured.

There being no evidence in support of an essential element of the pleaded cause of action, a take-nothing judgment should have been rendered.

■ By their briefs, the parties have joined the issue whether the judgment is sustainable on the theory of breach of contract. In lieu of an extended discussion of the diverse positions taken, it suffices to state that Back, having pleaded only fraud, cannot recover on the unpleaded ground of breach of contract. *Starr v. Ferguson,* 140 Tex. 80, 166 S.W.2d 130, 132 (1942).

The judgment of the trial court is reversed, and judgment is here rendered that Neville Back take nothing by his cause of action asserted against M. W. Yarborough. Rule 434, Texas Rules of Civil Procedure.