**ECC PARKWAY JOINT VENTURE, Appellant,**

**v.**

**Peter W. BALDWIN, individually and d/b/a The Baldwin Company, and Duvall–Giles Company, Inc., Appellees and Cross–Appellants,**

**v.**

**Frank W. HARRISON III, Title Insurance Company of Minnesota, American Title Company of Dallas, and William R. Fox, Cross–Appellees.**

No. 05–87–00060–CV.

Court of Appeals of Texas, Dallas.

Jan. 18, 1989.

Rehearing Denied March 3, 1989.

John W. Bickel, II, William A. Brewer, III, James S. Renard, Leonard H. Plog, II, Dallas, for appellant.

Charles R. McConachie, Kenneth F. Plifka, Dallas, for Duvall–Giles Co.

W. Andrew Barr, Thomas A. Connop, Dallas, for Frank W. Harrison, III.

Corbet F. Bryant, Jr., Dallas, for Title Ins. Co. of Minnesota & for American Title Co. of Dallas.

W. Bruce Monning, Bruce L. Collins, III, Dallas, for Peter W. Baldwin.

William R. Fox, Garland, pro se.

Before ENOCH, C.J., and LAGARDE and WHITTINGTON [1], JJ.

ENOCH, Chief Justice.

ECC Parkway Joint Venture complains that it was sold a tract of raw land without being told that the property was subject to a prior deed restriction limiting to thirty feet the height of any building constructed on the property. From this simple seed has sprung a veritable wilderness of litigation. ECC first sued its title insurer, Title Insurance Company of Minnesota, to recover under its title policy, and was paid a sum

---

[1] The Honorable John Whittington, Justice, succeeded the Honorable Nathan Hecht, a member of the original panel, at the expiration of his term on December 31, 1988. Justice Whittington has reviewed the briefs and the record before the court.

of money in settlement of that action. Now in this action ECC has sued the seller, Peter W. Baldwin, d/b/a The Baldwin Company, and a broker, Duvall–Giles Company, Inc., for fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act[2], alleging that Baldwin and Duvall–Giles failed to disclose the existence of the height restriction and represented that the restriction did not exist when they knew it did. ECC has also sued Duvall–Giles for breach of fiduciary duty. Baldwin, in turn, has sued Duvall–Giles and its agent, Frank W. Harrison III, for contribution and indemnity. Both Baldwin and Duvall–Giles have also sued Minnesota Title, its agent, American Title Company of Dallas, and American Title's employee, William R. Fox, for contribution and indemnity. The trial court granted motions for summary judgment dismissing all these claims, and severed them from the claims remaining in the case, mostly for attorneys fees. ECC, Baldwin and Duvall–Giles appeal.

We conclude that the trial court was correct in granting the motions for summary judgment in favor of Minnesota Title, American Title, and Fox. However, the trial court erred in granting the balance of the motions for summary judgment. We hold, among other things, that:

—ECC's constructive knowledge of the height restriction from the deed records is no defense to ECC's claims against Baldwin and Duvall–Giles;

—ECC is not precluded from recovering on its claims against Baldwin and Duvall–Giles by a provision in the contract of sale calling for title insurance;

—ECC's claims against Baldwin and Duvall–Giles are not barred by the doctrine of merger;

—genuine issues of material fact subsist precluding summary judgment against ECC; and

—Baldwin and Duvall–Giles have no action for contribution and indemnity against the title companies who insured ECC's title because ECC has no action against such title companies for negligent misrepresentation.

Accordingly, we affirm the judgment of the trial court dismissing all claims against Minnesota Title, American Title and Fox, and in all other respects, we reverse the judgment and remand the case for further proceedings.

## I

Before turning to the parties' arguments, we first set out the factual background of the case, which is not especially complex, and the procedural background, which is more so.

## A

The summary judgment record discloses the following material facts which, except as indicated, are undisputed.

Peter W. Baldwin, a real estate broker doing business as The Baldwin Company, acquired the 2.264–acre tract of raw land which is the subject of this case, by a deed, duly recorded, which included the following restrictive covenant:

> This Deed is executed, and accepted subject to the following restriction, which restriction shall be a covenant running with the land:

> No building over thirty (30) feet in height shall be constructed, erected or placed on the property described and conveyed herein.

To help sell the property, Baldwin agent John Aldrich enlisted the aid of Frank Harrison, a real estate salesman associated with Duvall–Giles Company, Inc., real estate brokers. Having shown other properties in the same area to ECC Parkway Joint Venture, Harrison presented Baldwin's property to ECC.

Eventually, ECC agreed to buy the property and executed a contract, also signed by Harrison and Aldrich, which provided that Baldwin would convey to ECC "good and marketable title in fee simple to all of the property, free and clear of any and all liens, encumbrances, conditions, easements, assessments and restrictions," with certain

---

**2.** TEX.BUS. & COMM.CODE ANN. §§ 17.41–17.-63 (Vernon Supp.1988) ("DTPA").

exceptions immaterial to this case. The contract also contained the following provision relating to title insurance:

Within thirty (30) days from the date hereof, Seller agrees, at his sole expense, to cause to be furnished to Purchaser a current title commitment for an Owner's Title Insurance Policy ... setting forth the state of all title of the property and all exceptions, including easements, restrictions, rights of way, covenants, reservations and other conditions, if any, affecting the property which would appear in an Owner's Title Policy if issued, or which would affect in any way Purchaser's intended use of the property. Accompanying such title commitment, Seller shall also furnish Purchaser with copies of all documents affecting the property. In the event any exceptions appear in such commitment, other than those listed [in the contract], and other than the standard printed exceptions, that are unacceptable to Purchaser, then Purchaser shall within fifteen (15) days after receipt thereof, notify Seller in writing of such fact. Failure to object within the time set forth above constitutes waiver of all matters shown on said binder and acceptance thereof. Seller may then promptly undertake to eliminate or modify such unacceptable exceptions to the reasonable satisfaction of Purchaser. In the event Seller is unable to do so within thirty (30) days thereafter, Purchaser may terminate this Contract by notice in writing to Seller and be entitled to an immediate refund of the earnest money deposit or may accept such title as Seller can deliver at Purchaser's option.

The contract did not disclose the existence of a height restriction on the property.

The title policy commitment called for by the contract was issued by the Title Insurance Company of Minnesota through its authorized agent, American Title Company of Dallas. That commitment disclosed two restrictions which Baldwin or his agent explained did not affect ECC's planned commercial development and to which ECC therefore did not object. Neither the commitment nor any documents furnished with it in accordance with the contract disclosed the existence of the height restriction in the deed to Baldwin. American Title admits that it was negligent in failing to find the height restriction.

Baldwin conveyed the property to ECC by deed which provided:

This Deed is executed and delivered subject to easements, reservations, conditions, covenants and restrictive covenants affecting the property conveyed hereby as the same appear of record in the Office of the County Clerk of Dallas County, Texas.

Baldwin and Aldrich knew of the height restriction before ECC contracted to purchase the property but never told ECC about it. Harrison also knew of the height restriction early on but claims that he told ECC about it, borne out, he says, by the fact that ECC initially planned construction of a two-story building which would have met the height restriction. ECC denies that Harrison ever disclosed the existence of a height restriction on the property, and denies that its initial planning was limited to a two-story building. ECC further asserts that after it signed the contract and before closing, Harrison represented to it that there were no restrictions affecting the property except those disclosed in the title policy commitment. ECC claims that it first learned of the height restriction some eight months after closing, that it would not have acquired the property if it had known of the restriction, and that the property for which it paid $1,257,405 is worth at least $500,000 less with the restriction than without.

### B

ECC sued Minnesota Title on the title policy in federal court. In settlement of that action, Minnesota Title and American Title paid ECC $218,512.89, and ECC in turn released its claims against both companies and agreed to hold them harmless from any liability to any other party for any damages recovered by ECC from that party, to the extent of the amount paid by the companies.

ECC then initiated this action against Baldwin, asserting claims for common law and statutory fraud, negligent misrepresentation, and DTPA violations. ECC later asserted the same claims against Duvall–Giles, as well as a claim for breach of fiduciary duty. ECC's claims are based in essence upon three allegations: namely, that (1) Baldwin misrepresented in the contract of sale that it would (a) convey marketable title to ECC, and (b) furnish a title policy commitment showing all restrictions on the property; (2) Harrison, acting as Baldwin's agent, stated to ECC that there were no restrictions on the property other than those shown in the title policy commitment; and (3) Baldwin failed to disclose the existence of the height restriction to ECC.[3] Baldwin counterclaimed that ECC's DTPA action was groundless and brought in bad faith or for purposes of harassment. Duvall–Giles filed a cross-action against ECC for a declaration that its claims were meritless, and for attorney's fees.

Baldwin cross-claimed against Duvall–Giles and Harrison for contribution and indemnity. Harrison countered by charging that Baldwin's DTPA claims against him were groundless and brought in bad faith or for purposes of harassment.

Baldwin, Duvall–Giles and Harrison all cross-claimed against Minnesota Title and American Title for contribution and indemnity for their failure to disclose the height restriction to ECC. Baldwin and Duvall–Giles also joined American Title's agent William R. Fox in their cross-actions.

The trial court first rendered partial summary judgment for Baldwin dismissing all ECC's claims "arising out of or incident to" the contract, apparently on the ground that such claims were barred by the doctrine of merger.[4] The trial court next rendered summary judgment for Harrison dismissing all Baldwin's claims against him on the ground that no representation attributed to him could have caused ECC's damages. The trial court then rendered summary judgment for Minnesota Title, American Title and Fox on the ground that Baldwin and Duvall–Giles had no action for contribution and indemnity against them for failing to disclose the height restriction to ECC. Finally, the trial court rendered summary judgment dismissing all ECC's claims against Baldwin and Duvall–Giles.

Although the various summary judgments rendered by the trial court disposed of the major claims in the case, a few claims remained. Ostensibly to make its rulings on the major substantive issues final for purposes of appeal, the trial court severed its summary judgment rulings from the remaining claims in the case.

## II

We consider first the contentions of the parties as to whether the trial court erred in disposing of ECC's claims by summary judgment. Baldwin and Duvall–Giles moved for summary judgment on several grounds. For the most part, the trial court did not specify the grounds upon which it rested its ruling. Thus, to obtain reversal of the judgment, ECC must show that none of the grounds raised by Baldwin and Duvall–Giles in their motions supports summary judgment. *See Malooly Brothers Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

Some of the grounds raised by the motions for summary judgment ECC addresses in specific points of error. Others it addresses in a general point of error or in response to appellees' arguments. Only when we have considered all grounds raised can we determine whether the summary judgments in this case were proper.

## A

■ In their motions for summary judgment Baldwin and Duvall–Giles contend

---

**3.** These allegations, taken from ECC's second amended petition, do not include additional allegations asserted in ECC's third amended petition, which the trial court struck, and its fourth amended petition, which the trial court denied ECC leave to file.

**4.** The trial court did not specify which of the several grounds included in Baldwin's motion it relied upon in partially granting the motion. However, the only one which supports its ruling is Baldwin's contention that ECC's claims under the contract are barred by the doctrine of merger.

that ECC cannot recover against them for any concealment of the height restriction on the property it purchased because it had constructive notice from the deed records of the existence of that restriction. In its first two points of error ECC asserts that if the trial court granted Baldwin and Duvall–Giles summary judgment based upon this contention, it erred.

After this case was fully argued and submitted, the Texas Supreme Court held in *De Toca v. Wise*, 748 S.W.2d 449, 451 (Tex.1988), that, contrary to Baldwin's and Duvall–Giles' contention in this case, imputed or constructive notice under real property recording statutes is no defense to a buyer's action asserting DTPA violations and fraud. The parties have had an opportunity to argue in letter briefs the effect of *De Toca* on this case. Having considered these arguments, we conclude that *De Toca* applies to this case.

Three cases upon which Baldwin and Duvall–Giles rely heavily are specifically addressed in *De Toca*. One, *Jernigan v. Page*, 662 S.W.2d 760 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.), contains language to the effect that record notice is a defense to a DTPA action. *De Toca* expressly disapproves this language in *Jernigan*. Another case, *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex.1982), is not, as *De Toca* points out, a fraud case, which would support Baldwin's and Duvall–Giles' position, but a title dispute which stands only for the general proposition that a grantee's interest under a deed is subject to prior, properly recorded interests. As *De Toca* notes, deed records by statute afford notice of interests conveyed in real property for the purpose of protecting those interests and subsequent grantees, not for the purpose of protecting perpetrators of fraud. A third case, *NRC, Inc. v. Pickhardt*, 667 S.W.2d 292 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.), holds that constructive notice may initiate the limitations period on a fraud claim; it does not hold, however, as *De Toca* notes, that such notice bars such claim.

Other cases upon which Baldwin and Duvall–Giles rely, although not specifically addressed by *De Toca*, likewise do not provide the support they seek for their position. Baldwin and Duvall–Giles cite several cases which hold that a party cannot complain of being defrauded as to a matter specifically and accurately disclosed in his own deed: *Glasgow v. Hall*, 668 S.W.2d 863, 864 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Turberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678–79 (Tex. Civ.App.—Corpus Christi 1981, no writ); *Sutton v. Grogan Supply Co.*, 477 S.W.2d 930 (Tex.Civ.App.—Texarkana 1972, no writ); *Bradford v. Thompson*, 460 S.W.2d 932 (Tex.Civ.App.—Tyler 1970), *aff'd in part and rev'd and rendered in part*, 470 S.W.2d 633 (Tex.1971). These cases, however, are inapposite to this case in which ECC complains about a height restriction which was not disclosed in its deed. The general "subject to" language in ECC's deed does not specifically refer to the height restriction and thus distinguishes this case from those cited by Baldwin and Duvall–Giles. Another case upon which Baldwin and Duvall–Giles rely, *Urban Renewal Agency v. Bridges Signs*, 717 S.W.2d 701 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), is, like *Westland*, a title dispute, not a fraud case. Finally, a case much discussed by the parties, *Dallas Joint Stock Land Bank v. Harrison*, 138 Tex. 84, 156 S.W.2d 963 (1941), while very relevant to other issues in this case, as we note below, is not pertinent to the constructive notice issue.

Hence, we conclude that Baldwin and Duvall–Giles were not entitled to summary judgment on the grounds that ECC's constructive notice of the height restriction through the deed records is a defense to its claims for fraud and DTPA violations. Although *De Toca* does not expressly address whether constructive notice is a defense to other claims, like ECC's claims for negligent misrepresentation and breach of fiduciary duty, we see no basis for allowing the defense to these claims and not the others. To the extent that we hold that constructive notice is not grounds for summary

judgment against ECC's claims, we sustain ECC's points of error one and two.

### B

■ Baldwin, Duvall–Giles and Harrison argue that *Dallas Joint Stock Land Bank v. Harrison*, 138 Tex. 84, 156 S.W.2d 963 (1941), is precedent for dismissing ECC's claims in this case. In that case, Harrison and another individual agreed to purchase 440 acres of land from the Dallas Joint Stock Land Bank. The bank advised the buyers that the property was subject to an oil and gas lease which, the bank's agent represented, covered only 100 acres of the 440–acre tract. In fact, however, the lease covered the entire tract. The bank and the buyers entered into a contract of sale, which contained the following provision:

> The seller agrees to furnish an abstract of title showing a marketable title to said land free of all liens not specifically mentioned in the consideration for use in examining the title to said land. The buyer agrees to submit in writing his objections, if any, to said title within fifteen days from receipt thereof, and the seller agrees to perfect said title within a reasonable time thereafter. In the event the seller does not own all the minerals, it shall not be required to warrant the title to more than it owns, but the purchaser shall have the option to accept the title without all the minerals or reject the title if the seller does not acquire all the mineral rights within a reasonable time.

*Id.* 156 S.W.2d at 965. In accordance with this provision, the bank furnished the buyers an abstract of title which included the oil and gas lease covering, by its terms, the entire tract and not just a portion of it. The buyers, however, did not review the abstract or see the lease before the sale was closed. The bank conveyed the property to the buyers by a deed which excluded generally any mineral interest not owned by the bank but did not specifically refer to the lease in issue. When the buyers later learned the true extent of the oil and gas lease on the property, they sued the bank for fraud, and after a jury trial, recovered judgment. The supreme court, however, reversed. Acknowledging as a general rule that a buyer of land can sue his seller for fraud, the court nevertheless found the rule inapplicable to the facts before them:

> Here we have a case in which the seller and the buyers stipulate in a contract the specific terms of the sale and what is exacted of each to consummate such sale....
>
> ... It is undisputed that the abstract disclosed the lease, and that the buyers contracted to point out the objections, if any, to the title within a certain time; and certainly if they had exercised a reasonable inquiry they could have discovered the lease against the 440 acres. According to their own agreement, they obligated themselves to point out any objection to the title. This they did not do.
>
> Under the state of this record we hold that the plaintiffs are bound by the contract and the deed executed between themselves and the Bank, and that they cannot be allowed to recover for the alleged prior statements of the Bank's agent as to the amount of the land which was covered by the oil and gas lease. Under the contract the Bank agreed to furnish plaintiffs an abstract of title, and plaintiffs agreed to submit in writing any objections which they might have to the title. This clause was doubtless inserted for the protection of both parties against such representations as were allegedly made by [the Bank's agent] and others in this case. An agreement to submit objections to the title certainly imposed on the buyers either a direct or an implied agreement to examine the abstract, or to have it examined by an attorney....
>
> ... Under such a contract as this, and under the letter from the Bank to the plaintiffs, and under the terms of the deed itself, the buyers could not close their eyes to the facts which were fully available to them and which had been called to their attention.

*Id.* 156 S.W.2d at 966–67.

Although *Dallas Joint Stock Land Bank* is similar to the instant case, there are important differences between the two.

In that case, the parties contracted for the seller to provide an abstract of title, which revealed an outstanding interest contrary to the seller's representation. In this case, the parties contracted for the seller to provide a title commitment, which did not reveal the height restriction contrary to the alleged representation. In both cases, the buyers were contractually obligated to make any objections to the title proffered within a certain time period, requiring that they review the materials furnished by the seller. In that case, however, the buyers could have determined from reviewing the abstract that the seller's representation to them was false. In this case, ECC could not determine from the title commitment that there was a height restriction on the property.

Baldwin, Duvall–Giles and Harrison argue that these distinctions between *Dallas Joint Stock Land Bank* and the instant case are inconsequential. The important factor in *Dallas Joint Stock Land Bank*, they contend, is not what the buyers could have known from the abstract they contracted to review, but that the buyers agreed to look to the abstract for information about the state of title to the property and not to any representations by the seller. *Dallas Joint Stock Land Bank* holds, they argue, that a buyer of real estate may contract to look solely to certain information to determine the state of title to the property, and when he does, no misinformation attributable to the seller can cause him damage. Such a rule, they say, allows a seller to protect himself from any misrepresentation made on his behalf while also protecting the buyer from any defect in title. In this case, they contend, Baldwin intended and ECC agreed in the contract of sale, in effect, that ECC would look solely to the title commitment for assurance as to the title to the property, and not to any representation by or on behalf of the seller. Thus, Baldwin, Duvall–Giles and Harrison conclude, ECC's alleged damages were caused solely by the defective title commitment and not by any representation attributable to them.

This argument, although not without considerable force, does not persuade us.

While the result in *Dallas Joint Stock Land Bank* is clear, the precise basis for it is less clear. We read the case, not so much as an instance of when a seller's misrepresentation cannot cause buyer's damages, but as one in which a buyer cannot reasonably rely on a representation by the seller when he has at least implicitly agreed to review contrary information furnished to him. If we are correct in our interpretation of *Dallas Joint Stock Land Bank*, then it is quite a different case from this one in which ECC was never furnished information revealing the height restriction on the property. Even if we are incorrect, however, and *Dallas Joint Stock Land Bank* is to be read to support the proposition that a buyer can agree to look solely to certain materials for information about his title, we cannot conclude that ECC did so under the contract of sale in this case. All ECC agreed to do was object to any exceptions shown in the title commitment. Assuming ECC could have agreed to look solely to title insurance for recompense for a title defect which Baldwin, Duvall–Giles or Harrison might fraudulently have represented did not exist, we cannot conclude that it did so simply by agreeing that Baldwin would furnish such title insurance.

Accordingly, we conclude that *Dallas Joint Stock Land Bank* does not support the summary judgments against ECC in this case.

### C

 In his motion for summary judgment Baldwin contends that ECC's claims are barred by the doctrine of merger, which states:

> When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties. No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is func-

tus officio and the rights of the parties rest thereafter solely in the deed. *Alvarado v. Bolton,* 749 S.W.2d 47, 48–49 (Tex.1988). In its third point of error ECC asserts that if the trial court granted Baldwin summary judgment based upon this contention, it erred.

Baldwin argues that the deed to ECC was expressly subject to any outstanding interests and therefore did not purport to convey the property free of the height restriction. Any representations that the property would not be subject to any such restriction, made prior to the deed, are, Baldwin contends, merged into the deed, extinguished, and no longer actionable. Were Baldwin correct, there could never be a cause of action for fraud in the sale of real estate unless the misrepresentation were contained in the deed itself. Baldwin is, however, incorrect. The doctrine of merger does not operate to bar claims of fraud, accident, or mistake in transactions leading up to the deed. *See Commercial Bank, Unincorporated v. Satterwhite,* 413 S.W.2d 905, 909 (Tex.1967).

We hold that Baldwin was not entitled to summary judgment based upon the doctrine of merger and to this extent sustain ECC's third point of error.

### D

■ All other grounds raised by Baldwin and Duvall–Giles in their motions for summary judgment are rife with fact issues. One issue is whose agent was Harrison. Baldwin and Duvall–Giles contend that ECC had actual notice of the height restriction through its agent, Harrison. ECC contends that Harrison was not its agent but Baldwin's and Duvall–Giles'. The parties' contentions leave Harrison orphaned of principal pending trial on the merits. Another issue is the scope of Harrison's agency, if any. In its fourth and fifth points of error, ECC argues that Baldwin is liable for his own agents' misrepresentations as well as those of any third party which he adopted, used, or benefited from. Baldwin contends that even if Harrison were his agent, he was a special agent for whose representations Baldwin was not liable.

Yet another issue, somewhat related, is whether Harrison breached any fiduciary duty to ECC. Still another issue is whether the title companies were agents of any party to the case.

We need not undertake to summarize the summary judgment record on these issues. Suffice it to say that all are hotly contested, and the evidence is conflicting. In its sixth and seventh points of error, ECC contends that subsisting fact issues precluded summary judgment as to any of its claims. We agree, and sustain these two points of error, as well as ECC's points of error four and five.

### E

Finding no ground to support summary judgment against ECC on its claims, we conclude that those judgments against it must be reversed. In its eighth and ninth points, ECC complains that the trial court erred in striking its third amended petition and in denying leave to file its fourth amended petition. In its tenth and last point of error, ECC complains that the trial court erred in taxing all court costs against it. Inasmuch as we have concluded that the judgments against ECC must be reversed, we need not address its last three points of error.

### III

We turn now to Baldwin's and Duvall–Giles' contentions in their cross-appeals.

### A

■ Baldwin in his first cross-point of error, and Duvall–Giles in its second cross-point of error, both complain that the trial court erred in rendering summary judgment against them on their claims for contribution and indemnity against Minnesota Title, American Title and Fox (collectively referred to as "the title companies"). Neither Baldwin nor Duvall–Giles allege any independent basis of liability against the title companies. Their sole contention is that the title companies are liable to them for any damages ECC may recover, because the title companies were negligent in

failing to disclose the height restriction to ECC in the title commitment, and were thus joint tortfeasors with Baldwin and Duvall–Giles.

The title companies concede that they were negligent in failing to disclose the height restriction to ECC. Their liability for that failure, however, lies in their contractual undertakings in the title policy, not in negligence. Their duty was not to advise ECC as to the state of title to the property, but to insure against ECC's loss resulting from any defects. *See Prendergast v. Southern Title Guaranty Co.*, 454 S.W.2d 803 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Stone v. Lawyers' Title Ins. Corp.*, 537 S.W.2d 55 (Tex. Civ.App.—Corpus Christi 1976), *rev'd on other grounds*, 554 S.W.2d 183 (Tex.1977); *see also Mary Ellen Sandlie Trust v. Pioneer Nat'l Title Ins. Co.*, 648 S.W.2d 761 (Tex.App.—Corpus Christi 1983, no writ). The three cases cited by Baldwin and Duvall–Giles in support of their contrary position are inapposite: *Lane v. Security Title & Trust Co.*, 382 S.W.2d 326 (Tex.Civ.App. —Dallas 1964, writ ref'd n.r.e.) (action allowed against title company, not for negligence, but for fraud); *Great American Mortgage Investors v. Louisville Title Ins. Co.*, 597 S.W.2d 425 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (title company held not liable for negligent misrepresentation, and discussion whether it might be in other circumstances was unsupported dicta); *Lawyers Title Co. v. Arthur*, 569 S.W.2d 578 (Tex.Civ.App.—Waco 1978, no writ) (title company liable as escrow agent for failure to record release of lien).

▮ As a rule, no action for contribution and indemnity lies against a party who has no liability to the injured party. *See, e.g., Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 553 (Tex.1981); *Southwestern Elec. Power Co. v. Martin Equip. Co.*, 593 S.W.2d 428, 430 (Tex.Civ.App.—Dallas 1980, no writ). Inasmuch as the title companies are not liable to ECC in negligence for failing to disclose the height restriction, they cannot be liable to Baldwin and Duvall–Giles for contribution or indemnity. Accordingly, we overrule Baldwin's first cross-point of error and Duvall–Giles' second cross-point of error.

**B**

▮ ECC did not sue Duvall–Giles before all its claims against Duvall–Giles were barred by limitations. However, after Baldwin asserted a third-party claim against Duvall–Giles for contribution and indemnity, Duvall–Giles filed a cross-claim against ECC for a declaratory judgment to recover its attorney's fees from ECC in the event Baldwin recovered its own attorney fees from ECC. In response, ECC filed a counterclaim against Duvall–Giles, asserting claims similar to those it had already asserted against Baldwin. Duvall–Giles' moved to strike ECC's counterclaim as barred by limitations, which motion the trial court denied. Duvall–Giles complains in its first cross-point of error that the trial court's ruling was error.

Texas Civil Practice and Remedies Code section 16.069 allows a defendant to file within thirty days of an action being filed against him a counterclaim containing a cause of action arising out of the same transaction or occurrence that would otherwise be barred by limitations. ECC argues that its counterclaim is timely under section 16.069. Duvall–Giles argues that ECC's counterclaim should not be allowed because the purpose of section 16.069 is to preclude a claimant from waiting to file his claim until after his would-be adversary's own claim against him is barred by limitations. *See Hobbs Trailers v. J.T. Arnett Grain Co.*, 560 S.W.2d 85, 88–89 (Tex. 1977). While we agree with Duvall–Giles as to the purpose of section 16.069, we see no reason why that purpose is not served by allowing ECC's counterclaim instead of disallowing it.

▮ Duvall–Giles additionally argues that section 16.069 does not apply because its claim against ECC is not for affirmative relief but only for attorney's fees and that only contingently, based upon the outcome of Baldwin's claim against ECC. *Cf. Lyles v. Johnson*, 585 S.W.2d 778 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n.r.e.) (claim of offset is not an affirmative claim).

514

Claims for attorney's fees are generally contingent on the claimant's prevailing. A claim for attorney's fees is a claim for affirmative relief.

■ Finally, Duvall–Giles argues that section 16.069 does not apply to ECC's DTPA claims. The limitations period for DTPA actions, Duvall–Giles notes, is governed exclusively by section 17.56A of the Texas Business and Commerce Code. *See Brooks Fashion Stores v. Northpark Nat'l Bank,* 689 S.W.2d 937 (Tex.App.—Dallas 1985, no writ). Section 17.56A, amended after section 16.069 was enacted, expressly applies to all DTPA actions. Because section 17.56A does not reference section 16.-069, Duvall–Giles argues, section 16.069 cannot operate to modify the fixed period set by section 17.56A. One of our sister federal courts has reached this conclusion in *MBank Fort Worth v. Trans Meridian, Inc.,* 625 F.Supp. 1274, 1281–82 (N.D.Tex. 1985). We do not agree with *MBank.* Rather, we believe that by enacting section 17.56A in a statutory context which already included section 16.069, the Legislature intended section 16.069 to have the same effect in DTPA actions as in all other actions. Certainly, the purpose of section 16.069 is as valid for DTPA claims as it is for any other type of claims. We are not obliged to follow *MBank,* and inasmuch as we do not find it persuasive, we choose not to do so. Instead, we hold that section 16.069 applies to DTPA claims.

Having determined that ECC's counterclaim against Duvall–Giles is not barred by limitations, we conclude that the trial court did not err in denying Duvall–Giles' motion to strike the counterclaim. Accordingly, we overrule Duvall–Giles' first cross-point of error.

C

In his second cross-point of error Baldwin argues that the trial court erred in rendering summary judgment against him on his claims against Harrison for contribution and indemnity. In response, Harrison relies on *Dallas Joint Stock Land Bank of Dallas v. Harrison,* 156 S.W.2d 963 (Tex. 1941), a case we have discussed at length above. For the same reasons that we have concluded that *Dallas Joint Stock Land Bank* does not preclude ECC's action against Baldwin and Duvall–Giles, we likewise conclude that it does not preclude Baldwin's action against Harrison. The trial court therefore erred in granting Harrison's motion for summary judgment, and Baldwin's second cross-point of error must consequently be sustained.

D

In his third cross-point of error Baldwin argues that the trial court erred in rendering summary judgment against him on his claims against Duvall–Giles for contribution and indemnity. Duvall–Giles argues that those claims are extinguished if we uphold either its or Baldwin's summary judgment against ECC. We have upheld neither. Duvall–Giles also appears to argue that Baldwin's claims against it for contribution and indemnity are barred by limitations because ECC's claims against Duvall–Giles are likewise barred. We have concluded, however, that ECC's claims against Duvall–Giles are not barred by limitations. There remaining no valid basis for summary judgment against Baldwin on its claims against Duvall–Giles, the trial court erred in granting such summary judgment. Accordingly, we sustain Baldwin's third cross-point of error.

IV

In sum, we have concluded that the trial court erred in rendering the summary judgments in this case except those in favor of Minnesota Title, American Title, and Fox. Those latter judgments are affirmed. In all other respects the judgment of the trial court is reversed, and the case is remanded for further proceedings.