OPINION

 No. 04-07-00075-CV

SAN ANTONIO PROPERTIES, L.P., 
Thomas McCalley, and Daniel B. Brunette,
Appellants

v.

PSRA INVESTMENTS, INC. 
a/k/a PSRA, Inc. And As Assignee of Richard C. Gano, III,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-15969
Honorable Richard E. Price, Judge Presiding
 
Opinion by:    Sandee Bryan Marion, Justice
 
Sitting:            Alma L. López, Chief Justice
Sandee Bryan Marion, Justice
                        Phylis J. Speedlin, Justice
 
Delivered and Filed:   March 12, 2008

AFFIRMED

            This is an appeal from a jury verdict in favor of PSRA Investments, Inc. (“PSRA”). We
conclude that an agreement by PSRA to purchase an apartment complex “as is” did not, as a matter
of law, negate PSRA’s fraud claims brought against San Antonio Properties, L.P. (“SAP”), the seller
of the property. Because we conclude the evidence is legally sufficient to support the jury’s verdict
on at least one of those fraud claims, we affirm.
BACKGROUND
            In the spring of 2001, Richard Anderson, one of the principals of PSRA, was searching for
a property to purchase in order to complete a tax-favored transaction by a July 2001 deadline. A
real estate broker, who knew Quail Creek apartments had been listed for sale the previous year, told
Anderson about the apartments. PSRA and SAP, the owner of Quail Creek, entered into negotiations
for the sale of the property that ultimately culminated in the parties executing a Contract for Deed. 
After acquiring the property, PSRA began to experience problems with the plumbing, a decline in
occupancy rate, and crime. In 2003, two years after closing the sale, Anderson met with SAP
representatives in an effort to obtain concessions on the payment schedule. Eventually, PSRA
stopped making payments and SAP reclaimed possession of the property under the terms of the
Contract for Deed. 
            SAP sued PSRA for the balance of the payments owed under the Contract for Deed. PSRA
sued SAP and David Hruska and Tom McCalley, who were officers of SAP’s general partner, for
common-law fraud, statutory fraud, and negligent misrepresentation. During the pendency of the
suit, SAP sold the property, and distributed the proceeds to McCalley, Hruska, and Daniel Brunette. 
PSRA then amended its petition to add fraudulent-transfer claims against McCalley, Hruska, and
Brunette. Because it had resold the property, SAP dismissed its suit against PSRA, leaving only
PSRA’s claims pending. Following a jury trial, verdict was entered against SAP on PSRA’s fraud
and misrepresentation claims, and against McCalley, Hruska, and Brunette on PSRA’s fraudulent-transfer claims. Hruska settled with PSRA after trial. Only SAP, McCalley, and Brunette appeal. 
THE “AS-IS” AGREEMENT
            The Contract for Deed contains the following provision: “Buyer agrees to – . . . Accept the
Property in its present condition ‘AS IS,’ after having inspected the Property to Buyer’s satisfaction.” 
The contract also contains a merger clause that states: “This contract, including any attached
exhibits, is the entire agreement of the parties, and there are no oral representations, express or
implied warranties, agreements, or promises pertaining to this contract not incorporated in writing
in this contract.” SAP first argues that PSRA’s agreement to purchase the property “as is”
conclusively negates the element of causation in all of PSRA’s claims. 
            A valid as-is agreement “prevents a buyer from holding a seller liable if the thing sold turns
out to be worth less than the price paid because it is impossible for the buyer’s injury on account of
this disparity to have been caused by the seller.” See Prudential Ins. Co. of Am. v. Jefferson Assoc.,
Ltd., 896 S.W.2d 156, 161 (Tex. 1995). “By agreeing to purchase something ‘as is’, a buyer agrees
to make his own appraisal of the bargain and to accept the risk that he may be wrong.” Id. Thus,
a buyer’s own evaluation “constitutes a new and independent basis for the purchase, one that
disavows any reliance upon representations made by the seller.” Pairett v. Gutierrez, 969 S.W.2d
512, 516 (Tex. App.—Austin 1998, pet. denied). However, an as-is agreement may not have “this
determinative effect in every circumstance.” Prudential, 896 S.W.2d at 162. “A buyer is not bound
by an agreement to purchase something ‘as is’ that he is induced to make because of a fraudulent
representation or concealment of information by the seller.” Id. FRAUDULENT INDUCEMENT
            Prior to entering into the Contract for Deed, the parties had executed a Purchase Agreement
pursuant to which SAP agreed to provide PSRA with operating statements for the years 1998
through 2001 and in which SAP represented that all “assets were in good working order.” SAP’s
marketing materials stated the property had undergone a major rehabilitation of $2.1 million in 1994. 
In its petition, PSRA alleged it was fraudulently induced into entering into an agreement to purchase
Quail Creek “as is” based upon the following misrepresentations made by SAP: (1) the apartments’
economic performance was accurately represented in the operating statements provided to PSRA by
SAP; (2) the property was in good working order; and (3) SAP and its limited partners repeatedly
assured PSRA that they had spent $2.1 million on improvements for the property. 
            On appeal, SAP argues there is no evidence the as-is agreement itself was fraudulently
induced. According to SAP, any evidence that the sale of the property may have been fraudulently
induced will not support a finding that the as-is agreement was fraudulently induced. PSRA counters
that its agreement to purchase the property “as is” was based upon the parties’ unequivocal
agreement that, in making its decision, PSRA could rely on information SAP provided about the
property. According to PSRA, this court must determine whether the contract language, in light of
the surrounding circumstances, shows a clear and unequivocal intent by PSRA to relinquish its right
to rely on SAP’s representations. PSRA concludes that because the contract language and the
surrounding circumstances do not demonstrate the existence of such an intent, the as-is clause does
not preclude it from recovering damages for SAP’s alleged misrepresentations.
            The parties disagree over how to frame the issue. SAP argues the focus should be on whether
the as-is clause itself was fraudulently induced, while PSRA argues the focus should be on whether
the sale of the property was fraudulently induced thereby invalidating the entire agreement. We
agree with PSRA. A buyer must prove that “but for” the representations of the seller regarding the
condition of the property that is the subject of the contract, the buyer would not have assented to a
contract that contained an as-is clause. See Prudential, 896 S.W.2d at 162 (seller cannot assure
buyer of property’s condition to obtain buyer’s agreement to purchase ‘as is’, and then disavow the
assurance that procured the ‘as is’ agreement); Fletcher v. Edwards, 26 S.W.3d 66, 76 (Tex.
App.—Waco 2000, pet. denied) (holding that if the buyers “were fraudulently induced to enter the
real estate contract as they allege, that fraud vitiates all documents which the [buyers] executed as
a part of the transaction.”); Larsen v. Carlene Langford & Assoc., Inc., 41 S.W.3d 245, 253 (Tex.
App.—Waco 2001, pet. denied) (holding, “To successfully raise . . . fraudulent inducement the buyer
must present some summary judgment evidence that ‘but for’ the representations of the seller
regarding the condition of the subject of the contract, the buyer would not have assented to a contract
which contained an ‘as is’ clause.”); Procter v. RMC Capital Corp., 47 S.W.3d 828, 834 (Tex.
App.—Beaumont 2001, no pet.) (agreeing with Larsen court). Therefore, we next examine the
record to determine whether the evidence sufficiently supports a finding on the elements of
fraudulent inducement. 
A.        Sufficiency of the evidence
            “Fraudulent inducement . . . is a particular species of fraud that arises only in the context of
a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent
inducement claim, the elements of fraud must be established as they relate to an agreement between
the parties.” Haase v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001). Here, the jury charge tracked
the common law and statutory elements of PSRA’s various fraud claims. Although SAP’s brief on
appeal states the issue as a challenge to both the legal and factual sufficiency of the evidence, the
substance of SAP’s argument is that there is “no evidence” of materiality, there is “no evidence” of
reliance and reliance is “not justifiable as a matter of law”, and there is “no evidence” of intent. 
Therefore, we determine only whether the evidence on these elements is legally sufficient. 
            PSRA contends it was fraudulently induced to purchase the property based upon several
alleged misrepresentations, including that the operating statements provided by SAP falsely showed
Quail Creek had been operating at a profit. In its petition, PSRA alleged SAP, Hruska, and
McCalley “used an accounting system designed to conceal the true economic performance of the
apartments. . . . This accounting system made the apartments appear to be more profitable than they
were in actuality.”
            There is no dispute that SAP provided PSRA with operating statements for the years 1998
through 2001. At the time Quail Creek was sold to PSRA, Linda Gross was the Quail Creek
supervisor for First Choice Management Group.


 Gross was responsible for preparing the budget;
hiring, training, and supervising on-site staff; implementing leasing policies; approving expenditures;
and handling insurance and taxes. In preparing the budget, Gross decided which expenses went into
which budget category. There is also no dispute that the operating statements provided to PSRA did
not include capital expenditures because someone deliberately excluded that information by covering
the capital expenditures listed on the operating statement and then photo-copying the statement. The
resulting photo-copied operating statement, minus the capital expenditures, was then given to PSRA. 
As a result of SAP’s actions, expenses totaling $119,000 for the years 1998 through 2001 were not
disclosed, which in turn resulted in four years of operating statements showing a positive net
operating income. 
            As an explanation for why they deliberately covered up the capital expenditures, both Gross
and Hruska testified that SAP never provided capital expenditure information to potential buyers. 
Hruska said it was his policy for “years and years” and such a practice was common in the industry. 
Gross conceded, however, that a profit and loss statement that included capital expenditures would
provide a “fuller picture” of the apartment complex’s economic performance. To illustrate the
significance in this case of the deletion of the expenditures from the operating statements, Anderson
testified that the operating statements provided by SAP were not consistent with SAP’s tax returns
for the same years.


 The tax returns showed “zero capital expenditures” and approximately $74,000
in regular maintenance expenses. Conversely, the copy of the operating statements that included the
capital expenditures showed approximately $74,000 in capital expenditures. Anderson stated that
if the expenses shown as “regular maintenance expenses” on the tax returns had also been shown as
“regular maintenance expenses” on the operating statements, rather than being included in the
undisclosed capital expenditures, the net operating income for Quail Creek would have changed
substantially. McCalley admitted that from both a “profit and loss perspective” and a “tax return
perspective” the apartments showed an annual operating loss.
            On appeal, SAP argues that Anderson noticed the lack of capital-expenditure information in
the operating statements, but he made no further inquiry, assuming instead that there were no capital
expenditures during the relevant four year period. SAP contends Anderson’s assumption was not
justified. However, Hruska testified the parties understood PSRA had the right to rely on the
information provided by SAP to PSRA during the due diligence period and upon SAP’s
representations in the purchase agreement. Anderson testified he would not have purchased the
property or signed the Contract for Deed if he had known about the “missing expenses.” 
            There is no dispute that the parties here are all sophisticated, knowledgeable investors in
commercial real estate. However, even sophisticated buyers have the right to rely on the veracity
of the financial information provided to them by the sellers. We therefore conclude the evidence is
legally sufficient to support the jury’s common law and statutory fraud findings.


 Accordingly, we
next address SAP’s contention that the merger clause contained in the Contract for Deed negates the
element of reliance.
B.        Merger clause
            A “merger clause” is a contractual provision to the effect that the written terms of the contract
may not be varied by prior agreements because all such agreements have been merged into the
written document. IKON Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 125 n.6 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied). Here, the final document executed by the parties,
the Contract for Deed, does not mention SAP’s obligation to provide any financial information to
SAP, nor does it contain any promises or warranties regarding the property’s condition. Instead, the
Contract for Deed states PSRA accepts the property as-is, after having inspected the property to
PSRA’s satisfaction. The contract also contains a merger clause, which provides that the contract
is “the entire agreement of the parties, and there are no oral representations, express or implied
warranties, agreements, or promises pertaining to this contract not incorporated in writing in this
contract.” SAP relies on the Texas Supreme Court’s opinion in Schlumberger Technology Corp. v.
Swanson, 959 S.W.2d 171, 177 (Tex. 1997), for its argument that this merger clause precludes
PSRA’s claim for fraudulent inducement.
            In Schlumberger, the Swansons relinquished all rights, claims, and interests in an offshore
diamond project and a lease, and released all causes of action against Schlumberger, known or
unknown. In the release, the Swansons also specifically stated as follows:
[E]ach of us expressly warrants and represents and does hereby state ... and represent
... that no promise or agreement which is not herein expressed has been made to him
or her in executing this release, and that none of us is relying upon any statement
or representation of any agent of the parties being released hereby. Each of us
is relying on his or her own judgment and each has been represented by Hubert
Johnson as legal counsel in this matter. The aforesaid legal counsel has read and
explained to each of us the entire contents of this Release in Full, as well as the legal
consequences of this Release . . . . (Emphasis added by Supreme Court.)
 
The issue before the Supreme Court was whether this disclaimer precluded the Swansons, as a
matter of law, from recovering damages against Schlumberger for fraudulently inducing them to
settle a commercial dispute between the parties.
            The Court acknowledged that parties should be able to bargain for and execute a release
barring all further disputes. Id. at 179. “This principle necessarily contemplates that parties may
disclaim reliance on representations. And such a disclaimer, where the parties’ intent is clear and
specific, should be effective to negate a fraudulent inducement claim. As an example, a disclaimer
of reliance may conclusively negate the element of reliance, which is essential to a fraudulent
inducement claim.” Id. The Court then described the circumstances under which such disclaimers
are binding:
            The contract and the circumstances surrounding its formation determine
whether the disclaimer of reliance is binding. Because the parties were attempting
to put an end to their deal, and had become embroiled in a dispute over the feasibility
and value of the project, we conclude that the disclaimer of reliance the Swansons
gave conclusively negates the element of reliance.
Id. at 179-80.
            The Court concluded by stating, “we hold that a release that clearly expresses the parties’
intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about
specific matters in dispute, can preclude a claim of fraudulent inducement. We emphasize that a
disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim.” Id. at
181. 
            Examining the circumstances here, we note that the merger language appears to be boiler-plate because it is included in a section entitled, “Buyer and Seller Agree to the following” and it is
one of among eighteen “agreements,” including agreements regarding the payment of attorney’s fees,
where and to whom notices should be sent, and venue. Unlike the circumstances in Schlumberger,
the Contract for Deed represented the beginning of the parties’ relationship and not its end. Also
unlike in Schlumberger, the merger clause does not specifically and expressly disclaim reliance on
any representations regarding the subject-matter of the Contract for Deed. Finally, if SAP
fraudulently induced PSRA to enter into the Contract for Deed, then that fraud vitiates the entire
contract. See Fletcher, 26 S.W.3d at 76. If SAP is correct in its argument that the merger clause
precludes PSRA’s fraud claims because it negates the element of reliance, “there could never be a
cause of action for fraud in the sale of real estate unless the misrepresentation were contained in the
deed itself.” ECC Parkway Joint Venture v. Baldwin, 765 S.W.2d 504, 512 (Tex. App.—Dallas
1989, writ denied). SAP is, however, incorrect. A written contract containing a merger clause can
be avoided for antecedent fraud or fraud in its inducement. Dallas Farm Mach. Co. v. Reaves, 307
S.W.2d 233, 239 (Tex. 1957); ECC Parkway, 765 S.W.2d at 512. Therefore, we do not agree with
SAP that the merger clause here negates an element of PSRA’s fraud claims as a matter of law. 
CONCLUSION
            We conclude the “as is” clause does not conclusively negate the element of causation in all
of PSRA’s claims and the evidence is legally sufficient to support the jury’s verdict. Accordingly,
we affirm the trial court’s judgment.



 
Sandee Bryan Marion, Justice