**SAN ANTONIO PROPERTIES, L.P., Thomas McCalley, and Daniel B. Brunette, Appellants,**

v.

**PSRA INVESTMENTS, INC. a/k/a PSRA, Inc. and as Assignee of Richard C. Gano, III, Appellees.**

No. 04–07–00075–CV.

Court of Appeals of Texas, San Antonio.

March 12, 2008.

Rehearing Overruled May 13, 2008.

Amy Warr, Douglas W. Alexander, Alexander Dubose Jones & Townsend LLP, Austin, TX, Jonathan Yedor, Elms Harmon & Macchia L.L.P., San Antonio, TX, for Appellant.

Walter V. Williams, Walter V. Williams, P.C., Julie A. Ford, George and Brothers, L.L.P., Austin, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a jury verdict in favor of PSRA Investments, Inc. ("PSRA"). We conclude that an agreement by PSRA to purchase an apartment complex "as is" did not, as a matter of law, negate PSRA's fraud claims brought against San Antonio Properties, L.P. ("SAP"), the seller of the property. Because we conclude the evidence is legally sufficient to support the jury's verdict on

at least one of those fraud claims, we affirm.

## BACKGROUND

In the spring of 2001, Richard Anderson, one of the principals of PSRA, was searching for a property to purchase in order to complete a tax-favored transaction by a July 2001 deadline. A real estate broker, who knew Quail Creek apartments had been listed for sale the previous year, told Anderson about the apartments. PSRA and SAP, the owner of Quail Creek, entered into negotiations for the sale of the property that ultimately culminated in the parties executing a Contract for Deed. After acquiring the property, PSRA began to experience problems with the plumbing, a decline in occupancy rate, and crime. In 2003, two years after closing the sale, Anderson met with SAP representatives in an effort to obtain concessions on the payment schedule. Eventually, PSRA stopped making payments and SAP reclaimed possession of the property under the terms of the Contract for Deed.

SAP sued PSRA for the balance of the payments owed under the Contract for Deed. PSRA sued SAP and David Hruska and Tom McCalley, who were officers of SAP's general partner, for common-law fraud, statutory fraud, and negligent misrepresentation. During the pendency of the suit, SAP sold the property, and distributed the proceeds to McCalley, Hruska, and Daniel Brunette. PSRA then amended its petition to add fraudulent-transfer claims against McCalley, Hruska, and Brunette. Because it had resold the property, SAP dismissed its suit against PSRA, leaving only PSRA's claims pending. Following a jury trial, verdict was entered against SAP on PSRA's fraud and misrepresentation claims, and against McCalley, Hruska, and Brunette on PSRA's fraudulent-transfer claims. Hrus-

ka settled with PSRA after trial. Only SAP, McCalley, and Brunette appeal.

## THE "AS–IS" AGREEMENT

■ The Contract for Deed contains the following provision: "Buyer agrees to— ... Accept the Property in its present condition 'AS IS,' after having inspected the Property to Buyer's satisfaction." The contract also contains a merger clause that states: "This contract, including any attached exhibits, is the entire agreement of the parties, and there are no oral representations, express or implied warranties, agreements, or promises pertaining to this contract not incorporated in writing in this contract." SAP first argues that PSRA's agreement to purchase the property "as is" conclusively negates the element of causation in all of PSRA's claims.

■ A valid as-is agreement "prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury on account of this disparity to have been caused by the seller." *See Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). "By agreeing to purchase something 'as is', a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong." *Id.* Thus, a buyer's own evaluation "constitutes a new and independent basis for the purchase, one that disavows any reliance upon representations made by the seller." *Pairett v. Gutierrez,* 969 S.W.2d 512, 516 (Tex.App.-Austin 1998, pet. denied). However, an as-is agreement may not have "this determinative effect in every circumstance." *Prudential,* 896 S.W.2d at 162. "A buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller." *Id.*

## FRAUDULENT INDUCEMENT

Prior to entering into the Contract for Deed, the parties had executed a Purchase Agreement pursuant to which SAP agreed to provide PSRA with operating statements for the years 1998 through 2001 and in which SAP represented that all "assets were in good working order." SAP's marketing materials stated the property had undergone a major rehabilitation of $2.1 million in 1994. In its petition, PSRA alleged it was fraudulently induced into entering into an agreement to purchase Quail Creek "as is" based upon the following misrepresentations made by SAP: (1) the apartments' economic performance was accurately represented in the operating statements provided to PSRA by SAP; (2) the property was in good working order; and (3) SAP and its limited partners repeatedly assured PSRA that they had spent $2.1 million on improvements for the property.

On appeal, SAP argues there is no evidence the as-is agreement itself was fraudulently induced. According to SAP, any evidence that the sale of the property may have been fraudulently induced will not support a finding that the as-is agreement was fraudulently induced. PSRA counters that its agreement to purchase the property "as is" was based upon the parties' unequivocal agreement that, in making its decision, PSRA could rely on information SAP provided about the property. According to PSRA, this court must determine whether the contract language, in light of the surrounding circumstances, shows a clear and unequivocal intent by PSRA to relinquish its right to rely on SAP's representations. PSRA concludes that because the contract language and the surrounding circumstances do not demonstrate the existence of such an intent, the as-is clause does not preclude it from recovering damages for SAP's alleged misrepresentations.

■ The parties disagree over how to frame the issue. SAP argues the focus should be on whether the as-is clause itself was fraudulently induced, while PSRA argues the focus should be on whether the sale of the property was fraudulently induced thereby invalidating the entire agreement. We agree with PSRA. A buyer must prove that "but for" the representations of the seller regarding the condition of the property that is the subject of the contract, the buyer would not have assented to a contract that contained an as-is clause. *See Prudential,* 896 S.W.2d at 162 (seller cannot assure buyer of property's condition to obtain buyer's agreement to purchase 'as is', and then disavow the assurance that procured the 'as is' agreement); *Fletcher v. Edwards,* 26 S.W.3d 66, 76 (Tex.App.-Waco 2000, pet. denied) (holding that if the buyers "were fraudulently induced to enter the real estate contract as they allege, that fraud vitiates all documents which the [buyers] executed as a part of the transaction."); *Larsen v. Carlene Langford & Assoc., Inc.,* 41 S.W.3d 245, 253 (Tex.App.-Waco 2001, pet. denied) (holding, "To successfully raise ... fraudulent inducement the buyer must present some summary judgment evidence that 'but for' the representations of the seller regarding the condition of the subject of the contract, the buyer would not have assented to a contract which contained an 'as is' clause."); *Procter v. RMC Capital Corp.,* 47 S.W.3d 828, 834 (Tex. App.-Beaumont 2001, no pet.) (agreeing with *Larsen* court). Therefore, we next examine the record to determine whether the evidence sufficiently supports a finding on the elements of fraudulent inducement.

### A. Sufficiency of the evidence

■ "Fraudulent inducement ... is a particular species of fraud that arises only

in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex.2001). Here, the jury charge tracked the common law and statutory elements of PSRA's various fraud claims. Although SAP's brief on appeal states the issue as a challenge to both the legal and factual sufficiency of the evidence, the substance of SAP's argument is that there is "no evidence" of materiality, there is "no evidence" of reliance and reliance is "not justifiable as a matter of law", and there is "no evidence" of intent. Therefore, we determine only whether the evidence on these elements is legally sufficient.

PSRA contends it was fraudulently induced to purchase the property based upon several alleged misrepresentations, including that the operating statements provided by SAP falsely showed Quail Creek had been operating at a profit. In its petition, PSRA alleged SAP, Hruska, and McCalley "used an accounting system designed to conceal the true economic performance of the apartments.... This accounting system made the apartments appear to be more profitable than they were in actuality."

There is no dispute that SAP provided PSRA with operating statements for the years 1998 through 2001. At the time Quail Creek was sold to PSRA, Linda Gross was the Quail Creek supervisor for First Choice Management Group.[1] Gross

was responsible for preparing the budget; hiring, training, and supervising on-site staff; implementing leasing policies; approving expenditures; and handling insurance and taxes. In preparing the budget, Gross decided which expenses went into which budget category. There is also no dispute that the operating statements provided to PSRA did not include capital expenditures because someone deliberately excluded that information by covering the capital expenditures listed on the operating statement and then photo-copying the statement. The resulting photo-copied operating statement, minus the capital expenditures, was then given to PSRA. As a result of SAP's actions, expenses totaling $119,000 for the years 1998 through 2001 were not disclosed, which in turn resulted in four years of operating statements showing a positive net operating income.

As an explanation for why they deliberately covered up the capital expenditures, both Gross and Hruska testified that SAP never provided capital expenditure information to potential buyers. Hruska said it was his policy for "years and years" and such a practice was common in the industry. Gross conceded, however, that a profit and loss statement that included capital expenditures would provide a "fuller picture" of the apartment complex's economic performance. To illustrate the significance in this case of the deletion of the expenditures from the operating statements, Anderson testified that the operating statements provided by SAP were not consistent with SAP's tax returns for the same years.[2] The tax returns showed

---

1. First Choice Management Group manages apartments, such as Quail Creek, for the apartment owners. The jury charge instructed the jury as follows: SAP "is a legal entity who acts through agents. In these instructions and questions, any act or omission by an agent of [SAP] is attributable to [SAP] as the principal, as long as the agent was acting

within the scope of the agency relationship at the time of the act or omission. At all times pertinent to this case, First Choice Management acted on behalf of" SAP.

2. Although the Purchase Agreement did not require SAP to provide the tax returns for the

"zero capital expenditures" and approximately $74,000 in regular maintenance expenses. Conversely, the copy of the operating statements that included the capital expenditures showed approximately $74,000 in capital expenditures. Anderson stated that if the expenses shown as "regular maintenance expenses" on the tax returns had also been shown as "regular maintenance expenses" on the operating statements, rather than being included in the undisclosed capital expenditures, the net operating income for Quail Creek would have changed substantially. McCalley admitted that from both a "profit and loss perspective" and a "tax return perspective" the apartments showed an annual operating loss.

On appeal, SAP argues that Anderson noticed the lack of capital-expenditure information in the operating statements, but he made no further inquiry, assuming instead that there were no capital expenditures during the relevant four year period. SAP contends Anderson's assumption was not justified. However, Hruska testified the parties understood PSRA had the right to rely on the information provided by SAP to PSRA during the due diligence

period and upon SAP's representations in the purchase agreement. Anderson testified he would not have purchased the property or signed the Contract for Deed if he had known about the "missing expenses."

There is no dispute that the parties here are all sophisticated, knowledgeable investors in commercial real estate. However, even sophisticated buyers have the right to rely on the veracity of the financial information provided to them by the sellers. We therefore conclude the evidence is legally sufficient to support the jury's common law and statutory fraud findings.[3] Accordingly, we next address SAP's contention that the merger clause contained in the Contract for Deed negates the element of reliance.

## B. Merger clause

 A "merger clause" is a contractual provision to the effect that the written terms of the contract may not be varied by prior agreements because all such agreements have been merged into the written document. *IKON Office Solutions, Inc. v.*

---

relevant years, Anderson obtained copies of the returns after the underlying dispute arose.

**3.** Because the evidence is legally sufficient to support findings that SAP's representations regarding the financial performance of Quail Creek were fraudulent, we do not address PSRA's other allegations of misrepresentations by SAP. Also, we reject SAP's argument that the jury's failure to find Hruska and McCalley individually liable for fraud precludes any argument that they engaged in fraudulent activity as agents of PSRA. First, the jury charge specifically instructed the jury that First Choice Management Group acted on SAP's behalf. Second, this argument, as well as the argument raised for the first time in oral argument that the findings in favor of Hruska and McCalley must be reconciled, if possible, with the adverse finding against SAP, has not been preserved. SAP's argument is, in essence, an argument that the

jury's verdict contained conflicting answers. Texas Rule of Civil Procedure 295, which provides the method for correcting conflicting jury answers, requires that the trial court be made aware of the conflict before the jury is discharged or the error is waived. SAP did not bring such a complaint to the trial court's attention prior to the jury's discharge. "Absent a conflict complaint, there is no basis for reconciling the jury's responses, and the court must give effect to each finding in the ordinary fashion". *Springs Window Fashions Div., Inc. v. Blind Maker*, 184 S.W.3d 840, 867 (Tex.App.-Austin 2006, pet. granted, remanded by agr.). Accordingly, in the face of general principles of sufficiency review, which require us to consider all of the evidence in light of the charge actually submitted, we decline to limit our sufficiency review. *See id.*

*Eifert,* 125 S.W.3d 113, 125 n. 6 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Here, the final document executed by the parties, the Contract for Deed, does not mention SAP's obligation to provide any financial information to SAP, nor does it contain any promises or warranties regarding the property's condition. Instead, the Contract for Deed states PSRA accepts the property as-is, after having inspected the property to PSRA's satisfaction. The contract also contains a merger clause, which provides that the contract is "the entire agreement of the parties, and there are no oral representations, express or implied warranties, agreements, or promises pertaining to this contract not incorporated in writing in this contract." SAP relies on the Texas Supreme Court's opinion in *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex. 1997), for its argument that this merger clause precludes PSRA's claim for fraudulent inducement.

In *Schlumberger,* the Swansons relinquished all rights, claims, and interests in an offshore diamond project and a lease, and released all causes of action against Schlumberger, known or unknown. In the release, the Swansons also specifically stated as follows:

[E]ach of us expressly warrants and represents and does hereby state ... and represent ... that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that **none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment** and each has been represented by Hubert Johnson as legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this

Release.... (Emphasis added by Supreme Court.)

The issue before the Supreme Court was whether this disclaimer precluded the Swansons, as a matter of law, from recovering damages against Schlumberger for fraudulently inducing them to settle a commercial dispute between the parties.

The Court acknowledged that parties should be able to bargain for and execute a release barring all further disputes. *Id.* at 179. "This principle necessarily contemplates that parties may disclaim reliance on representations. And such a disclaimer, where the parties' intent is clear and specific, should be effective to negate a fraudulent inducement claim. As an example, a disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim." *Id.* The Court then described the circumstances under which such disclaimers are binding:

The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding. Because the parties were attempting to put an end to their deal, and had become embroiled in a dispute over the feasibility and value of the project, we conclude that the disclaimer of reliance the Swansons gave conclusively negates the element of reliance.

*Id.* at 179–80.

The Court concluded by stating, "we hold that a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement. We emphasize that a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim." *Id.* at 181.

 Examining the circumstances here, we note that the merger language appears to be boiler-plate because it is included in a section entitled, "Buyer and Seller Agree to the following" and it is one of among eighteen "agreements," including agreements regarding the payment of attorney's fees, where and to whom notices should be sent, and venue. Unlike the circumstances in *Schlumberger*, the Contract for Deed represented the beginning of the parties' relationship and not its end. Also unlike in *Schlumberger*, the merger clause does not specifically and expressly disclaim reliance on any representations regarding the subject-matter of the Contract for Deed. Finally, if SAP fraudulently induced PSRA to enter into the Contract for Deed, then that fraud vitiates the entire contract. *See Fletcher*, 26 S.W.3d at 76. If SAP is correct in its argument that the merger clause precludes PSRA's fraud claims because it negates the element of reliance, "there could never be a cause of action for fraud in the sale of real estate unless the misrepresentation were contained in the deed itself." *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 512 (Tex.App.-Dallas 1989, writ denied). SAP is, however, incorrect. A written contract containing a merger clause can be avoided for antecedent fraud or fraud in its inducement. *Dallas Farm Mach. Co. v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 239 (1957); *ECC Parkway*, 765 S.W.2d at 512. Therefore, we do not agree with SAP that the merger clause here negates an element of PSRA's fraud claims as a matter of law.

## CONCLUSION

We conclude the "as is" clause does not conclusively negate the element of causation in all of PSRA's claims and the evidence is legally sufficient to support the jury's verdict. Accordingly, we affirm the trial court's judgment.[4]

---

4. Because of our disposition of the challenge to the "as is" clause and the complaint regarding the sufficiency of the evidence, it is not necessary that we address SAP's remaining issues. Tex.R.App. P. 47.1.