**REVERSE and RENDER in part and AFFIRM in part; Opinion Filed April 26, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-10-01279-CV**

**YNM CORPORATION, Appellant**
**V.**
**MANAGEMENT SOLUTIONS, INC., BOCA RATON APARTMENTS, LLC, DIXIE WINDS, LLC, SUN WINDS, LLC, AND WENDELL A. JACOBSON, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-08-14127**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Schenck

YNM Corporation ("YNM") appeals the trial court's take-nothing judgment in its suit against appellees Management Solutions, Inc. ("MSI"), Boca Raton Apartments, LLC, Dixie Winds, LLC, Sun Winds, LLC (collectively, "MSI parties"), and Wendell A. Jacobson. In six issues, YNM challenges the trial court's findings and conclusions regarding its claims for breach of contract and fraud and attorney's fees. In two cross-issues, appellees argue alternatively the trial court erred in failing to award them attorney's fees and costs. We reverse the portion of the

judgment denying appellees' claims for attorney's fees and costs; reform the judgment to award appellees attorney's fees in the amount of $134,289.82; and affirm the remainder of the judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

YNM was the general partner of Creekside at Northlake, L.P. ("Creekside"), the owner of the Creekside at Northlake Apartments ("the Project"), and Dr. Neal Small and Mrs. Cheryl Small were limited partners. In December 2000, Creekside obtained a loan insured by the United States Department of Housing and Urban Development ("HUD"). In connection with that loan, Dr. Small signed a Regulatory Agreement, which required prior written approval by the Secretary of HUD before, among other things, conveying the mortgaged property or retaining any income of the Project.[1]

---

[1] The trial record includes a regulatory agreement mandating more specifically that:

Owners shall not without the prior written approval of the Secretary:

(a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property.

(b) Assign transfer, dispose of or encumber any personal property of the project including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs.

* * *

(e) Make, receive and retain any distribution of assets or any income of any kind of the project . . . .

The record does not include a signed copy of this regulatory agreement or any other conclusive evidence regarding in what capacity Dr. Small signed the agreement, e.g. as a representative of YNM or Creekside.

–2–

By 2004, the loan was in default. Later that same year, Jacobson learned the Project was for sale and in foreclosure. Jacobson owned MSI, a property management company. After viewing the property and meeting with Dr. Small's counsel, Jacobson expressed interest in acquiring the Project and indicated he would negotiate HUD's approval of the sale with Ray Carson, the Director of HUD's Fort Worth office, with whom he had previously done business. When Jacobson met with Carson, he learned HUD was concerned that Dr. Small and YNM had taken money out of the Project while it was in default and understood that prior written permission of the Secretary of HUD of the sale would have been required. On December 1, 2004, the parties[2] entered into a Partnership Interest Purchase and Sale Agreement ("PSA") pursuant to which the MSI parties (1) acquired 100% of Creekside—the partnership that owned the Project—from YNM and the Smalls and (2) ultimately paid off the HUD-insured loan. Jacobson also signed the PSA, personally guaranteeing to YNM and the Smalls that the MSI parties and Creekside would operate the Project until satisfaction of the HUD-insured loan.

In late 2006, HUD sent a letter to YNM notifying appellant of allegations that, as general partner of Creekside, it violated the Regulatory Agreement by taking money out of the Project while it was in default and by selling the Project without written permission from the Secretary of HUD. HUD eventually filed suit against

---

[2] The PSA defines "Seller" as YNM, Dr. Small, and Mrs. Small; and "Buyer" is defined as the MSI parties.

YNM, and the parties ultimately reached a settlement agreement whereby YNM paid $40,000 to HUD.

On November 7, 2008, YNM filed suit against appellees, asserting claims for breach of contract, statutory fraud, common law fraud, and negligent misrepresentation. In their petition, YNM alleged appellees had violated the provisions of the PSA by failing to indemnify YNM for its costs associated with its defense against and settlement of the 2006 HUD lawsuit and by making material misrepresentations to YNM regarding their communications with HUD so as to induce YNM to enter the PSA. Appellees counterclaimed, seeking attorney's fees pursuant to the PSA and declarations that appellees did not violate the PSA, are not responsible for indemnifying YNM, and are entitled to attorney's fees under contract and statute. The case proceeded to a bench trial, after which the trial court signed a take-nothing judgment on YNM's claims against appellees and on appellees' counterclaims against YNM. The trial court, after requests from YNM, later signed findings of facts and conclusions of law. This appeal followed.[3]

## DISCUSSION

In all of its issues on appeal, YNM challenges certain of the trial court's findings and conclusions to support its take-nothing judgment on its claims against appellees. We review findings of fact for factual and legal sufficiency. *See Wells*

---

[3] After the parties filed their respective briefs, this Court was notified an order appointing a receiver was entered concerning appellees MSI and Jacobson. Accordingly, we abated the case until we received notice in 2021 that the receivership had ended and no other reason remained to abate the appeal.

–4–

*Fargo Bank, N.A. v. HB Regal Parc, LLC*, 383 S.W.3d 253, 260 (Tex. App.—Dallas 2012, no pet.). When, as here, a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it has the burden of proof, that party can prevail only if it demonstrates that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We reverse the ruling for factual insufficiency of the evidence only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We review de novo the trial court's legal conclusions based on the findings of fact to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## I. YNM Did Not Establish Its Claim for Breach of the PSA

In its first two issues, YNM challenges the trial court's findings and conclusions related to whether appellees failed to comply with—and thus breached—the PSA by failing to secure a release of the regulatory agreement from HUD[4] and by failing to defend, indemnify, and hold YNM harmless from HUD's claims.[5] *See Allman v. Butcher*, 314 S.W.3d 671, 674 (Tex. App.—Dallas 2010, no

---

[4] As part of this issue, YNM challenges the first finding of fact that, "The Defendants did not fail to comply with the parties' Agreement, the Partnership Interest Purchase and Sale Agreement sued upon by the Plaintiff," and the nineteenth conclusion of law that, "The Plaintiff is not entitled to any affirmative relief and the Defendants are entitled to a dismissal of Plaintiff's claims with prejudice."

[5] As part of this issue, YNM challenges the nineteenth conclusion of law, set forth in footnote 3, and the second finding of fact that:

pet.) (holding plaintiff in breach of contract action must establish (1) a valid contract, (2) plaintiff's performance, (3) defendant's breach of contract by failing to perform an act expressly or impliedly promised, and (4) plaintiff's damage as a result of defendant's breach).

As part of the PSA, in the subsection titled "Payment of HUD Loan," the MSI parties[6] agreed to either:

> Cause the HUD Loan to paid off in Full, with a Release of Lien and Release of Regulatory Agreement to be file of record in the ordinary course thereafter (Seller acknowledges that so long as the HUD Loan is paid off in full by March 31, 2005, the releases may not be recorded by said date), and provide to Seller satisfactory evidence thereof, or

> Obtain and deliver to Seller one or more instruments executed by the holder of the HUD Loan, in form and content reasonably acceptable to Seller, the effect of which is to fully release each of the Sellers from any liability whatsoever on account of the HUD Loan.

The PSA defines the foregoing as "the HUD Loan Condition." YNM concedes the MSI parties paid off the HUD Loan in full, but argues the MSI parties failed to obtain a Release of Lien and Release of Regulatory Agreement. YNM urges the May 19, 2005 "Discharge of Regulatory Agreement" the MSI parties obtained is insufficient

---

The Defendant parties to the Partnership Interest Purchase and Sale Agreement did not fail to indemnify defend or hold Plaintiff harmless from any and all debts, obligations, claims or liabilities whatsoever of the Creekside at Northlake, L.P., a Texas Limited Partnership, which may have arose or were incurred at or following December 1, 2004.

[6] Although the judgment refers to "Defendants," we note Jacobson signed the PSA in his personal capacity to guarantee the performance of operating the property pending satisfaction of the HUD Loan. The text of the agreement further provides, "Jacobson is not otherwise personally bound by this Agreement." Accordingly, we overrule YNM's first and second issues to the extent they challenge whether Jacobson individually breached any other provision of the PSA.

to satisfy their obligations under the PSA because the discharge includes a statement that:

> Nothing herein shall constitute a release or waiver of any claims or causes of action, known or unknown, that the Secretary may have against the Owner or any other person or entity for violations of the Regulatory Agreement which took place prior to the execution of this document.

The MSI parties respond that the "Release" described above is not defined in the PSA or by any other evidence in the record, such that YNM failed to establish that the PSA required that if the MSI parties paid the HUD Loan in full that they must obtain a document that released YNM from any claims for violations that occurred prior to the execution of the document. The MSI parties further point to the PSA provision for Termination by Seller:

> In the event the HUD Loan Condition is not satisfied on or before March 31, 2005, and if Buyer has not paid the additional $50,000.00 to Seller on or before March 31, 2005, Seller may terminate the purchase and require the return of the interests to Seller by giving written notice to that effect to the Escrow Agent, who shall thereupon date the Re-Assignment as of the date of receipt of said notice and shall deliver the Re-Assignment to the Seller. Seller's written notice shall be given no later than April 10, 2005; otherwise, Seller shall be deemed to have waived its rights under this paragraph. The Seller's right to terminate and retake the Interests, as provided herein, together with the Seller's right to retain the Seller's Cash ($100,000) paid at Closing, shall be the Seller's sole and exclusive remedies hereunder for the failure of Buyer to satisfy the HUD Loan Condition or for the failure of Buyer to pay the additional $50,000.00 payment to Seller; however, Buyer shall have all remedies at law of (sic) equity for any other breach (except to the extent otherwise expressly limited in this Agreement).

We agree with the MSI parties. Even assuming, without deciding, YNM had conclusively established the MSI parties failed to comply with the HUD Loan

Condition, we could not conclude YNM was entitled to affirmative relief for that breach. The PSA plainly provides that YNM's "sole and exclusive remedies . . . for the failure of [the MSI parties] to satisfy the HUD Loan Condition" was to terminate the PSA and retake its interest in Creekside. *See Cantrell v. Broadnax*, 306 S.W.2d 429, 432 (Tex. App.—Dallas 1957, no writ) (holding parties to contract may agree upon remedies that shall accrue in case of breach and courts shall enforce same); *see also* TEX. R. APP. P. 44.1(a)(1) (prohibiting reversal of judgment unless error probably caused rendition of improper judgment). None of the parties disputes that YNM failed to exercise that option. Accordingly, we overrule YNM's first issue.

In its second issue, YNM argues the MSI parties breached the PSA by failing to defend, indemnify, and hold YNM harmless from HUD's claims in 2006.[7] The PSA provides:

> Seller hereby indemnifies and holds Buyer harmless for any and all debts, obligations, claims or liabilities whatsoever of the Partnership which arise or are incurred prior to the Possession Date, it being the intent of this Agreement that Buyer purchase the Interests free of any liabilities whatsoever, except for the Assumed Liabilities and other obligations as specifically set forth in this Agreement. Buyer hereby agrees to indemnify, defend and hold Seller harmless from any and all debts, obligations, claims or liabilities whatsoever of the Partnership which arise or are incurred at or following the Possession Date; it being the intent that Seller shall have no further liabilities whatsoever

---

[7] As part of this issue, YNM challenges same conclusion of law and the second finding of fact that:

The Defendant parties to the Partnership Interest Purchase and Sale Agreement did not fail to indemnify defend or hold Plaintiff harmless from any and all debts, obligations, claims or liabilities whatsoever of the Creekside at Northlake, L.P., a Texas Limited Partnership, which may have arose or were incurred at or following December 1, 2004.

regarding the Partnership following the Possession Date. The indemnities in this Section 7 shall survive the Closing.

According to YNM, the MSI parties breached the PSA by failing to indemnify it for the claims HUD made against YNM. The MSI parties respond that the "Partnership" defined in the PSA is Creekside, and the claims made by HUD against YNM were not "debts, obligations, claims or liabilities whatsoever of the Partnership," such that they had no obligation as Buyer to indemnify YNM as Seller.

We construe indemnity agreements according to the normal rules of contract construction. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 353 (Tex. 2020). Our primary concern is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *See id.* Furthermore, we may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract. *See id.* In order to do so, we construe indemnity agreements strictly in order to give effect to the parties' intent as expressed in the agreement. *See id.*

YNM argues the HUD claims were against it in its capacity as general partner of Creekside, such that the claims were that of Creekside, and sets forth the following evidence. Dr. Small testified the allegations were made against YNM as general partner, and that he thought it was "likely" he signed the Regulatory Agreement in his capacity as a partner of Creekside. Although the record does not contain a signed copy of the Regulatory Agreement, it contains a letter from HUD alleging YNM in its capacity as the general partner of Creekside, the owner of the Project, violated the Regulatory Agreement, as well as the complaints filed against YNM, stating

–9–

"YNM executed a Regulatory Agreement" and that Dr. Small signed the Regulator Agreement. Construing the indemnity agreement strictly, as we must, *see id.*, we cannot agree with YNM's interpretation that evidence of its violations be attributed to Creekside.

YNM's interpretation would expand the parties' rights and responsibilities beyond the limits they agreed upon in their sale of Creekside. *See id.* We find further support in our conclusion from the text of the indemnity provision: "it being the intent of this Agreement that Buyer purchase the Interests [in Creekside] free of any liabilities whatsoever, except for the Assumed Liabilities and other obligations as specifically set forth in this Agreement." Accordingly, we overrule YNM's second issue.

## II. Jacobson Did Not Commit Statutory or Common Law Fraud

In its third issue, YNM argues Jacobson committed fraud by representing to YNM that HUD had agreed to approve the sale of Creekside when he knew or should have known HUD did not approve the sale.[8]

Statutory fraud involving real estate consists of a false representation made to a person for the purpose of inducing that person to enter into a contract and relied

---

[8] As part of this issue, YNM challenges the findings of fact that:

3. The Defendants did not commit statutory fraud against the Plaintiff.

4. The Defendants did not commit fraud against the Plaintiff.

5. The Defendants did not make a negligent misrepresentation on which the Plaintiff justifiably relied.

–10–

on by that person in entering into that contract. *See* TEX. BUS. & COM. CODE § 27.01(a). To establish common law fraud, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

As discussed above, the Regulatory Agreement signed by Dr. Small prohibited the signor from, "without the prior written approval of the Secretary[,] [c]onvey[ing], transfer[ing], or encumber[ing] any of the mortgaged property." YNM argues the evidence shows Jacobson represented to YNM that he had obtained the approval of HUD and that he made this representation knowing that written approval was required and that he did not have time to get it. At trial, Jacobson testified he, after meeting with Carson, told Dr. Small that, "they had agreed to approve the transaction and accept payment from us." Dr. Small further testified he relied on Jacobson's statements that he had spoken to HUD and that HUD had approved the transaction:

> because to me it meant that not only did they believe he could perform, but that we would be released from any regulatory actions. In the event that we weren't, we paid for the closing documents specifically, repetitively, eloquently, to reflect releasing YNM, Neal Small and

–11–

Cheryl Small from any future obligations from HUD arising before or after the closing.

Jacobson responds that even if the foregoing establishes a false, material statement he intended Dr. Small to rely upon, Dr. Small's reliance is not justified because the PSA contains a disclaimer of reliance:

A. <u>Entire Agreement</u>. This Agreement, the Confidentiality Agreement, and the exhibits attached hereto contain the entire agreement between the parties, ***and no promise, representation***, warranty or covenant not included in this Agreement or any such referenced agreements ***has been*** or ***is being relied upon by either party***. Furthermore, neither party has made any representations, warranties or covenants to the other concerning any tax benefits or tax treatment which may accrue or be given to the other party in connection with the transactions contemplated hereby. ***Each party has relied upon its own examination of the full Agreement and the provisions thereof, and the counsel of its own advisors, and the warranties, representations and covenants expressly contained in this Agreement.*** No modification or amendment of this Agreement shall be of any force or effect unless made in writing and executed by both Buyer and Seller.

(emphasis added).

Both YNM and Jacobson rely on opinions from the supreme court regarding whether a disclaimer of reliance on representations may be effective to negate a fraudulent inducement claim. In *Schlumberger Technology Corp. v. Swanson*, the supreme court held a disclaimer of reliance was so effective but cautioned a disclaimer of reliance will not always bar a fraudulent inducement claim where the disclaimer lacks the requisite clear and unequivocal expression of intent necessary to disclaim reliance on the specific representations at issue. *See* 959 S.W.2d 171,

179, 181 (Tex. 1997). In *Forest Oil Corp. v. McAllen*, the supreme court clarified which facts guided their reasoning in *Schlumberger*:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

*See* 268 S.W.3d 51, 60 (Tex. 2008).

We agree with Jacobson that *Forest Oil* controls here such that the disclaimer of reliance in the PSA negates YNM's claims for common law and statutory fraud. Here, the record reflects the parties negotiated the terms of the contract and specifically discussed obtaining HUD's approval of the transaction. Neither party disputes they conducted their negotiations at arm's length. Jacobson testified to negotiating with Dr. Small's counsel who "eventually drafted the contract" and that Jacobson and his counsel read it before he signed. By the time Jacobson and Dr. Small entered negotiations, both had been involved in other real estate projects and had engaged in business with HUD. Finally, the disclaimer clearly states in relevant part: "no promise, representation, warranty or covenant not included in this Agreement or any such referenced agreements has been or is being relied upon by either party."

YNM urges the disclaimer here is not effective to negate justifiable reliance because it is "merely boilerplate language and does not specifically and expressly

disclaim reliance on any representations made the subject of the contract." YNM relies on an opinion from a sister court of appeals. *See San Antonio Props., L.P. v. PSRA Invests., Inc.*, 255 S.W.3d 255, 262 (Tex. App.—San Antonio 2008, pet. granted, judgment vacated w.r.m.). However, that opinion also distinguished between a simple merger clause and a clause disclaiming reliance on representation, which the supreme court has done as well. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, at 334–36 (Tex. 2011). In *Italian Cowboy*, the supreme court compared the disclaimers of reliance in *Schlumberger* and *Forest Oil*, noting they clearly disclaimed reliance on representations rather than simply indicating no representations were made other than those contained in the contract. *See id.* Here, the parties did not only cabin the forward-looking terms of their contract, they specifically disclaimed reliance and thus the provision defeated YNM's claims for fraud.

| Source | Provision Language |
|--------|--------------------|
| *Schlumberger* | [E]ach of us . . . expressly warrants and represents . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that none of us is *relying* upon any statement or representation of any agent of the parties being released hereby. Each of us is *relying* on his or her own judgment. . . . <br> *Schlumberger*, 959 S.W.2d at 180 (emphasis added). |
| *Forest Oil* | [We] expressly represent and warrant . . . that no promise or agreement which is not herein expressed has been made to them in executing the releases contained in this Agreement, and that they are not *relying* upon any statement or representation of any of the parties being released hereby. [We] are *relying* upon [our] own judgment. . . . <br> *Forest Oil*, 268 S.W.3d at 54 (emphasis added). |

| *Italian Cowboy* | Tenant acknowledges that neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises . . . except as expressly set forth herein. *Italian Cowboy*, 341 S.W.3d 336. |
|---|---|
| PSA | This Agreement, the Confidentiality Agreement, and the exhibits attached hereto contain the entire agreement between the parties, and no promise, representation, warranty or covenant not included in this Agreement or any such referenced agreements has been or is being *relied* upon by either party. . . . (emphasis added). |

In light of our conclusion regarding YNM's first three issues, we need not address its remaining issues.[9] *See* TEX. R. APP. P. 47.1.

## III. The Trial Court Erred in Failing to Award Appellees Their Attorney's Fees and Costs as the Prevailing Parties

In their first cross-issue, appellees urge the trial court erred by failing to award them attorney's fees and costs pursuant to the PSA. In reply, YNM agrees that, assuming the trial court's verdict in favor the MSI parties is upheld on appeal—which we have so concluded above by overruling YNM's first three issues—the MSI parties are entitled to recover their attorney's fees and costs as the prevailing parties.

Generally, each party must pay its own way in attorney's fees unless a statute or contract provides otherwise. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). When fee-shifting is authorized, whether

---

[9] In its fourth issue, YNM argues the fraud asserted in its third issue was committed "in a transaction involving real estate." In its fifth issue, YNM urges it conclusively proved its damages. And in its sixth and final issues, YNM challenges whether it was required to segregate its attorney's fees.

–15–

by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees. *See id.*

> The parties here agree the PSA provided for attorney's fees as follows:
>
> [T]he prevailing party in any litigation or other proceeding between the parties shall be entitled to recover reasonable attorneys' fees and all costs and expenses related to such litigation or other proceeding, notwithstanding any limitation on remedies contained herein.

The PSA does not define "prevailing party," but the supreme court has held a defendant may be a "prevailing party" by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case. *See id.* at 486. Here, appellees successfully secured a take-nothing judgment on YNM's claims for breach of contract, statutory fraud, common law fraud, and negligent misrepresentation. Although the trial court ruled against appellees on their counterclaim, that counterclaim sought attorney's fees under the instant PSA provision and a declaration that appellees did not breach the PSA, are not responsible for indemnification of YNM under the PSA, and are entitled to attorney's fees pursuant to the PSA. Thus, appellees were successful in obtaining a take-nothing judgment on the main issue: whether they breached the PSA.[10] Accordingly, we

---

[10] As for YNM's assertion in its supplemental letter that Jacobson could not be a prevailing party because he was not a party to the PSA, we disagree. Jacobson was indeed a party to the PSA, although his obligation under the PSA was limited to a personal guarantee of the MSI parties' performance of the obligations to operate the Project prior to when the HUD loan was satisfied. Moreover, he was a successful defendant in YNM's claims regarding breach of the PSA. *See Rohrmoos*, 578 S.W.3d at 486.

conclude appellees are "prevailing parties" under the PSA and reverse the portion of the trial court's judgment failing to award appellees their attorney's fees.

At trial, appellees presented evidence that they incurred $84,289.82 in reasonable and necessary attorney's fees and expenses through the end of trial, and asserted $50,000 is a reasonable and necessary attorney's fee and expense award for an appeal to this Court, and $50,000 is a reasonable and necessary attorney's fee and expense award for any petition for review filed with the supreme court, and another $50,000 is reasonable and necessary if that petition for review is granted. Apart from a post-submission argument Jacobson is not entitled to any fees as he is not a party to the PSA, YNM does not challenge the sufficiency of the evidence to support this fee award, nor did it offer any evidence appellees' fees were not reasonable or necessary, and instead concedes the MSI parties are entitled to recover their attorney's fees and costs as the prevailing parties.

In their second cross-issue, appellees alternatively seek the reversal of the trial court's denial of their request for declaratory judgment in order to allow appellees to recover their attorney's fees and costs. Because we sustain the first cross-issue, we need not address the second. *See* TEX. R. APP. P. 47.1.

### CONCLUSION

We reverse the portion of the judgment denying appellees' claims for attorney's fees and costs; reform the judgment to award the MSI parties their

–17–

attorney's fees in the amount of $134,289.82; and affirm the remainder of the judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

101279F.P05

–18–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

YNM CORPORATION, Appellant

No. 05-10-01279-CV     V.

MANAGEMENT SOLUTIONS,
INC., BOCA RATON
APARTMENTS, LLC, DIXIE
WINDS, LLC, AND WENDELL A.
JACOBSON, Appellees

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-08-14127.
Opinion delivered by Justice
Schenck. Justices Osborne and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment denying appellees' claims for attorney's fees and costs, and we **REFORM** the judgment to award appellees attorney's fees in the amount of $134,289.82. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellees MANAGEMENT SOLUTIONS, INC., BOCA RATON APARTMENTS, LLC, DIXIE WINDS, LLC, AND WENDELL A. JACOBSON recover their costs of this appeal from appellant YNM CORPORATION.

Judgment entered this 26th day of April 2022.